Michael Lee RITTGERS, Appellant,

v.

Irene Cecile RITTGERS, Appellee.

No. 13–90–175–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 20, 1990.

Rehearing Overruled Jan. 17, 1991.

Thomas White, Corpus Christi, for appellant.

Michael P. O'Reilly, Corpus Christi, for appellee.

Before NYE, C.J., and SEERDEN and KEYS, JJ.

## OPINION

NYE, Chief Justice.

This suit involves a claim for title and possession of land pursuant to an alleged oral agreement and a cross-claim for recovery of a portion of the net proceeds of an insurance claim settlement. After a bench trial, the court found that an oral contract for the sale of land existed between the parties. Accordingly, the court, among other things, ordered appellant, Michael Rittgers, to pay appellee, Irene Rittgers, the balance due and owing on their agreement and that appellee execute a deed conveying her interest in the realty to appellant. Appellant raises five points of error. We reverse and remand in part, reverse and render in part, and affirm in part.

Appellant and appellee divorced on January 31, 1986. The final decree of divorce awarded each party a one-half interest in and to the real property identified as Tract A–1, Northwest Heights, Nueces County, Texas (Tract A–1) and an undivided one-half interest "in the net recovery received from the claim being asserted in Cause # 85–4557–E; styled Frances [sic] A. Neff and Michael L. Rittgers, d/b/a Western Warehouse v. Union Standard Insurance Co. of Oklahoma, Inc." in the 148th District Court of Nueces County, Texas. The decree also provided that each party was responsible for one-half of the balance due, including principal, interest, tax and insurance escrow on the mortgage indebtedness due and owing for Tract A–1.

After the divorce appellant paid all mortgage installments for Tract A–1 as they came due. Appellee did not contribute any monies, in contravention of the divorce decree. Appellant has paid $5,400.00 in principal and $3,400.00 in interest. Upon receiving the Tract A–1 ad valorem tax bills, appellant purchased a cashier's check for one-half the total tax due and then forwarded the bill and the check to appellee. Appellee received the statements and the checks but did not pay any portion of the taxes. Thus, Tract A–1 risked foreclosure for unpaid taxes for years 1986 through 1988.

In October, 1986, appellant approached appellee regarding his purchase of her one-half of Tract A–1. They agreed upon a purchase price of $10,000.00, that appellant could pay in installments, and that appellee "would draw up the necessary papers" for the transaction. In October, 1986, appellant paid appellee $1,500.00, then $1,200.00 and $5,000.00 in February and March, 1987, respectively. Appellant then brought suit alleging that appellee breached their oral contract because she would not convey her interest in the tract. He sought judicial partition and contribution or reimbursement from appellee for her one-half of the mortgage payments paid beginning January, 1986, or in the alternative, enforcement of the oral agreement. Appellee answered and cross-claimed for her one-half interest in the net recovery of the insurance claim which appellant received and had not disbursed.

At trial, both parties conceded that appellant had met all mortgage payments and appellee did not contribute or reimburse him for her pro rata share of that obligation. Appellee testified that she received the ad valorem tax notices accompanied by appellant's cashier's check for his pro rata share of such obligations. She also admitted that she did not pay any portion of the taxes on Tract A–1 for the years 1986 through 1988.

Appellant testified that in October, 1986, he offered appellee $10,000.00 for her one-half interest in Tract A–1. Appellee accepted the offer and agreed that appellant could "pay it [the purchase price] to you as I get it." He stated that, at the time, appellee worked for a realtor and that she indicated to appellant that she would "draw up some papers" formulating a payment schedule, "and we would settle the land."

In February, 1987, appellee told appellant that she needed $1,200.00. Appellant gave appellee the money, to be credited to the Tract A–1 purchase. She indicated at that time that she had not yet drafted the promised documents. In March, 1987, appellee again went to appellant, this time requesting $5,000.00. Again, appellant paid appellee and requested the documents she had promised. Appellee again indicated that she did not have the opportunity to draft the documents reflecting their agreement.

Appellant testified that later, he met with appellee and presented her with a deed and demanded that she convey her interest to him by the close of business on March 16, 1987. Appellee refused to execute the deed until she received the final $2,300.00 owed. Appellee also testified that appellant indicated to her that he intended "to screw you on the insurance."

In April, 1987, appellant sent appellee a letter proposing a new agreement for the sale of Tract A–1. The letter informed appellee that appellant was weary of advancing her monies without a written agreement regarding Tract A–1. The letter went further, stating that he concluded that appellee's refusal to sign the documents indicated her reluctance to sell her interest in the property. Thus, he was withdrawing from their previous agreement and would treat the $7,700.00 she received from him plus the $1,307.97, her one-half of the total mortgage payments made after their divorce, as an advance against her one-half interest in the insurance settlement.

The letter also indicated that appellant believed that his net recovery from the insurance settlement was $11,286.97; accordingly, her one-half share amounted to $5,643.36. Subtracting the advances from appellee's share of the settlement, appellant's letter concluded that appellee actually owed him $3,364.60. Appellant testified that this letter was an attempt to impose a written contract different from the oral agreement because he was uncomfortable with the oral agreement.

Appellant testified that the gross insurance settlement recovery for a fire which destroyed one of their western wear stores was $70,463.57 and that after deductions for attorney's fees and other expenses, the net recovery was $60,040.71. Appellant stated that he owed his partner for merchandise destroyed in their store. In an affidavit filed at trial, appellant stated that the total fire loss claim submitted to the

insurance company was $89,194.39. Of that total, appellant's claim was for $14,035.59 and partner Neff's claim was for $61,236.36. The total settlement amount was 79% of the total claim, or $70,463.57. From that amount, the partners deducted $10,300.75 in attorney's fees, leaving a net recovery of $60,162.82 to be divided between the partners. The partners each took a share of the net recovery by dividing their original claims by 79% and dividing the remaining money equally. Thus, partner Neff received $48,875.34 and appellant received $11,286.73.

The trial court made findings of fact and conclusions of law. With respect to the oral agreement, the court found that the parties entered into an agreement whereby appellant agreed to purchase and appellee agreed to sell her undivided one-half interest in Tract A–1; that the agreed purchase price was $10,000.00; that pursuant to the agreement appellee received $7,700.00 from appellant; that appellant failed and refused to pay to appellee the remaining $2,300.00 due; that the delay in the purchase was not caused by appellee; that the delay in completing the purchase resulted solely from appellant's failure to pay the balance of the monies he owed; that if appellant had timely paid the balance of the money due to complete the purchase, all subsequent mortgage payments, taxes and other expenses associated with Tract A–1 would have been appellant's sole obligation; and that appellant should not be entitled to claim an offset for mortgage payments, taxes and other expenses associated with the land which accrued subsequent to the time that the agreement between the parties should have been completed.

The trial court filed findings of fact and conclusions of law. With regard to the insurance claim, the court found that appellant was a 50–50 partner with Frances A. Neff in the business giving rise to the insurance claim asserted in the suit identified in the divorce decree; that the net recovery in that suit was $60,162.82; that appellee and appellant's fifty percent of the net recovery was $30,081.41; that the language of the parties' divorce decree intended that appellee recover only one-half of the net recovery in favor of appellant; and that one-half of the recovery in favor of appellant to be paid to appellee was $15,040.71. The court found that during the trial of the case at bar, appellant claimed that his net recovery [of the insurance proceeds] should be reduced due to expenses which he needed to pay out of his portion of the recovery; that the lawyer representing appellant in the insurance-claim suit had no knowledge of the claimed reduction; and that the court granted appellant until March 2, 1990, to file an accounting showing the disposition of the proceeds from the settlement in the insurance-claim suit; that on March 28, 1990, the court allowed appellant to present additional testimony in an effort to account for the disposition of the proceeds from the settlement of the insurance-claim suit; that in both the accounting and the additional testimony appellant totally failed to account for the disposition of those proceeds. Lastly, the court found that appellee's reasonable and necessary attorney's fees at trial were $1,662.50 and $3,500.00 in the event appellant filed an appeal.

The court concluded that appellant owed appellee $2,300.00 to complete the purchase of her one-half interest in Tract A–1; that immediately upon appellant's payment of the remaining monies appellee must execute a deed conveying to appellant her undivided one-half interest in the tract; that appellant was indebted to appellee in the amount of $15,040.71, that amount being her portion of the net recovery in favor of appellant in the insurance-claim suit; that appellant pay appellee $1,662.50 in attorney's fees; that he pay appellee an additional $3,500.00 in attorney's fees should appellant file an appeal; and that appellant's indebtedness to appellee accrued ten percent per annum from April 5, 1990, until paid.

Appellant asserts in his first point of error that the trial court erred in finding that a contract existed between appellant and appellee. In his second point of error, appellant asserts that the trial court erred by failing to grant the partition for which appellant pleaded.

Appellant claimed that appellee fraudulently induced him into the alleged contract by appellee's representations that she would execute a warranty deed reserving a vendor's lien in her favor for the payment of the remaining $2,300.00 and that appellee failed to execute such a document. Appellee refused to execute a deed claiming that she must be paid in full prior to the execution. Appellant asserts on appeal that due to these apparent conflicts and others regarding terms of transfer and responsibility for payment of mortgage and taxes, the contract failed for indefiniteness. Finally, appellant asserts that the trial court erred by not ordering the partition which appellant is entitled to by law.

■ We find appellant's first argument unpersuasive. Appellant pleaded and testified at trial that a valid oral agreement existed, then, on appeal, argues that the agreement was, in fact, invalid. Despite his inconsistencies, this issue is easily resolved. It is axiomatic that an oral promise or agreement for the sale of land is within the Statute of Frauds and thus, cannot be enforced at law. *Zaruba v. Boethel*, 393 S.W.2d 716, 719 (Tex.Civ.App.—Corpus Christi 1965, no writ); Tex.Bus. & Com. Code Ann. § 26.01(a), (b)(4) (Vernon 1987). The oral agreement may be enforced in equity to prevent fraud should the purchaser show that (1) partial consideration was paid; (2) the purchaser took possession of the premises; and (3) the purchaser made permanent and valuable improvements to the property with the seller's consent. *Sharp v. Stacy*, 535 S.W.2d 345, 347 (Tex. 1976); *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921).

■ Both parties concede that any binding agreement to purchase Tract A–1 was never reduced to writing. Appellant testified that he paid appellee part of the agreed purchase price, although he denied that he took possession of the property. There was no evidence that he made any permanent and valuable improvements to the property with appellee's consent. Hence, there was no enforceable agreement at law or in equity, and the trial court

erred by finding a parol contract for the sale of Tract A–1.

■ An undivided possessory interest in property is a tenancy in common. *See Freeman v. Southland Paper Mills, Inc.*, 573 S.W.2d 822, 824 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.); *Republic Prod. Co. v. Collins*, 7 S.W.2d 187 (Tex. Civ.App.—Eastland 1928, writ ref'd). A cotenancy may be terminated by partition into severalty. *See Condra v. Grogan Mfg. Co.*, 228 S.W.2d 588, 597 (Tex.Civ.App. —Beaumont 1949), *aff'd*, 149 Tex. 380, 233 S.W.2d 565 (1950). Partition does not confer title, rather, it dissolves the cotenancy and the person receiving a specific share of property holds the same to the exclusion of the other cotenant who previously had equal possessory rights. *Garza v. Cavazos*, 148 Tex. 138, 221 S.W.2d 549, 552 (1949); Tex.Prop.Code Ann. § 23.004 (Vernon 1984).

■ A cotenant may compel a partition of jointly-owned real property. Tex.Prop. Code Ann. § 23.001 (Vernon 1984). Under Tex.R.Civ.P. 760, the trial court must determine each owner's share or interest, including all questions of law or equity which may arise and affect title to the realty. *Taub v. Kahn*, 646 S.W.2d 570, 571 (Tex. App.—Houston [1st Dist.] 1982, no writ). Prior to entering a partition decree, the court must determine whether the property is susceptible to partition and:

> [then] enter a decree directing the partition of such real estate, describing the same, to be made in accordance with the respective shares or interests of each of such parties entitled thereto, specify in such decree the share or interest of each party, and shall appoint three or more competent and disinterested persons as commissioners to make such partition in accordance with such decree and the law, a majority of which commissioners may act.

*Taub*, 646 S.W.2d at 571; Tex.R.Civ.P. 761; *see also De Leon v. Page*, 611 S.W.2d 688, 691 (Tex.Civ.App.—Corpus Christi 1980, no writ). Should the trial court determine that a fair and equitable division of the realty cannot be made, the court must or-

der a sale of the indivisible property and divide the proceeds among the cotenants according to their respective interests. Tex.R.Civ.P. 770; *see generally, Hoover v. Materi*, 515 S.W.2d 406, 408 (Tex.Civ.App. —El Paso 1974, writ ref'd n.r.e.).

■ Appellant properly requested in his petition a partition of the property and is entitled by § 23.001 to receive a partition. The evidence shows that a tax lien is on the property and that the lien exists because appellee failed to tender appellant's checks with her pro rata contribution to the taxing authority. The divorce decree ordered that both parties bear their pro rata share of the mortgage and tax burdens on the property. Thus, appellant should be reimbursed for providing appellee's portion of the mortgage payments for the years 1986, 1987, and 1988. The trial court erred by not granting appellant's rightful plea for partition. Appellant's second point of error is sustained. His first point of error is overruled.

■ Appellant asserts by his fourth point of error that the trial court abused its discretion when it found that appellant failed to comply with the court's order to file an accounting of the disposition of the insurance claim proceeds. Appellant argues that the trial court "requested the additional evidence in a very generic form, and when [appellant] attempted to comply with the request, the trial court found that he had failed to comply with the Order of the Court." He argues further that the court's Findings of Fact and Conclusions of Law state that appellant "failed to account for the disposition of the [insurance claim settlement] proceeds" and that the judgment and the statement of facts as transcribed at trial indicate that the court found that appellant "failed to file an accounting."

The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985). Rather, an appellate court may reverse a trial court for abuse of discretion only if, after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex.1987); *Downer*, 701 S.W.2d at 241–42; *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex. 1984). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer*, 701 S.W.2d at 241–42; *Saldana v. Saldana*, 791 S.W.2d 316, 320 (Tex.App.—Corpus Christi 1990, no writ); *Pierce v. Gillespie*, 761 S.W.2d 390, 398 (Tex.App.—Corpus Christi 1988, no writ).

An examination of the documents and the statement of facts reveals that appellant presented evidence regarding how he and his partner, Neff, although 50–50 partners, divided the insurance claim settlement proceeds in an unequal manner. Appellant stated that the gross insurance recovery was $70,463.57 and that the net recovery after appellant's deductions of attorney's fees and various other claimed expenses was $60,162.82. This proof was insufficient to comply with the court's order that appellant prove that such an accounting and disposition was proper, such as providing invoices for payments due for the expenses appellant deducted from the gross recovery. Appellant did not comply with the court's orders.

We hold that the trial court did not abuse its discretion when it found that appellant did not justify through an accounting, the disposition of the insurance proceeds. Appellant's fourth point of error is overruled.

■ In his third point of error, appellant challenges the legal sufficiency of the evidence to support the trial court's award of $16,703.21 to appellee. Appellant does not indicate how he calculated this figure; however, we will assume that it is the sum of $15,040.71, (equals the net recovery of $60,162.82; ¼ to appellee = $15,040.71) appellee's share of the net proceeds of the insurance claim settlement, and $1,662.50, the amount of attorney's fees awarded to appellee's counsel for trial representation.

In considering a "no evidence", "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Fin. Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

There is sufficient evidence to support the trial court's ruling. Appellant and Neff were 50–50 partners in a business endeavor which had an insurance claim. Appellee testified that appellant once told her that she would not get her fair share of the settlement. Appellant justified neither the unequal division of the settlement money between the partners nor the accounting factors or methods resulting in the final amount of money to be distributed among the parties involved. The divorce judgment ordered that appellee and appellant each had a one-half share of appellant's one-half of the total settlement amount. Furthermore, appellee's attorney testified regarding the amount of time involved in preparing his client's case for trial, that his hourly rate was fair and reasonable, and that his bill for services rendered in this matter was $1,662.50. Thus, the trial court's award of $15,040.71 and $1,662.50 in attorney's fees was supported by the evidence. Appellant's third point of error is overruled.

By his fifth and final point of error, appellant asserts that the trial court erred by failing to predicate the award of attorney's fees on appeal on appellant's success or failure in his appeal. We agree.

A trial court may not grant an unconditional award of appellate attorney's fees. *Smith v. Smith*, 757 S.W.2d 422, 426 (Tex.App.—Dallas 1988, writ denied); *Weaver v. King Ready Mix Concrete, Inc.*, 750 S.W.2d 913, 916 (Tex.App.—Waco 1988, no writ); *Siegler v. Williams*, 658 S.W.2d 236, 241 (Tex.App.—Houston [1st Dist.] 1983, no writ). A trial court may award appellate attorney's fees; however, it may not penalize a party for taking a successful appeal by taxing him with attorney's fees should he take such action. *Ortiz v. O.J. Beck & Sons, Inc.*, 611 S.W.2d 860, 867 (Tex.Civ.App.—Corpus Christi 1980, no writ); *King Optical v. Automatic Data Processing*, 542 S.W.2d 213, 218 (Tex.Civ. App.—Waco 1976, writ ref'd n.r.e.). Thus, the trial court must condition an appellate attorney's fees award upon the appellant's unsuccessful appeal. *Siegler*, 658 S.W.2d at 241; *Ortiz*, 611 S.W.2d at 867; *King Optical*, 542 S.W.2d at 218.

The trial court's judgment pertaining to the trial court's refusal to grant a partition of Tract A–1 is REVERSED AND REMANDED for a determination of whether Tract A–1 is susceptible to partition in kind and to proceed with the necessary steps to effect a partition. The trial court's judgment pertaining to the award of appellate attorney's fees is REVERSED AND RENDERED so that appellee take nothing. In all other respects, the judgment of the trial court is AFFIRMED.