Henry H. GOLDMAN, Jr. and John W. Goldman, Appellants,

v.

Warren ALKEK and Maureen Alkek, Appellees.

No. 13–91–227–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 4, 1993.

As Amended on Motion for Rehearing
March 11, 1993.

Rehearing Overruled April 8, 1993.

Jack Holland, Houston, Molly H. Anderson, Mike A. Hatchell, Tyler, for Appellants.

Robert P. Houston, Cynthia T. Sheppard, John Griffin, Jr., Victoria, for Appellees.

Before NYE, C.J., and SEERDEN and GILBERTO HINOJOSA, JJ.

## OPINION ON MOTION FOR REHEARING

NYE, Chief Justice.

We withdraw our former opinion and substitute the following. John and Henry Goldman (appellants) filed suit against Warren and Maureen Alkek to terminate a commercial lease, alleging breach of contract and fraud. The Goldmans also sought declaratory relief to establish that Alkek breached the lease. Warren Alkek counter-sued for damages, for a declaration of the amount of rent due under the lease, and a determination that he was not in default.

The parties tried the case to a jury. The Goldmans submitted their cause on breach of contract and fraud. Alkek alleged breach of contract and deceptive trade practices.[1] The jury answered every question in Alkek's favor. The trial court rendered judgment for actual damages, additional damages under the Texas Deceptive Trade Practices Act, attorney's fees, and prejudgment interest in the total amount of $210,097.26. The court denied the Goldmans' motion for judgment non obstante veredicto, motion for new trial, and motion to modify, correct, or reform the judgment.

By ten points of error, the Goldmans claim that the trial court erred in overruling the above-referenced motions because the evidence is legally insufficient to support the jury's findings, and because the findings are against the great weight and preponderance of the evidence. The Goldmans also contend that Maureen Alkek is not a proper party to the suit, that judgment rendered for her is improper, and that the award of certain damages and attorney's fees is excessive. We modify the judgment, and, as modified, we affirm.

John and Henry Goldman own property in Victoria County. They entered a ground lease with Warren Alkek and his partner, Galen May. May later assigned his lease interest to Maureen Alkek, Warren Alkek's mother. The lease term was thirty years. It provided that Alkek would build a convenience store (the Oak Hill Store) and install fuel pumps on the far northeasterly side of the property. The parties agreed that Alkek would pay a "minimum guaranteed rental" of $750 per month on the northeasterly portion of the property. That amount would be adjusted yearly for inflation,

1. Tex.Bus. & Com.Code Ann. § 17.46 et seq. (Vernon 1987).

starting the second year of the lease. In addition to the minimum guaranteed rental, the lease required additional rent based upon a percentage of gross sales from the store. Alkek further agreed to develop the remainder of the property and pay as rent a percentage of the reasonable monthly rental value of the existing buildings, whether occupied or not.

Alkek was to keep adequate records, conforming to generally accepted accounting principles, by which the gross sales would be determined. The books were subject to audit at the Goldmans' option.

Alkek built a structure housing the Oak Hill Food Store, the Oak Hill Liquor Store, and a video store, on the northeasterly portion of the land. Thereafter, the Goldmans complained that Alkek failed to pay percentage rentals on gross sales from the liquor and video stores and that he had violated other express provisions of the lease. After making several demands for the alleged delinquent payments, the Goldmans filed suit and sent Alkek a termination notice. Warren Alkek counterclaimed alleging violations of the DTPA and requesting a declaration that he did not breach the lease since he complied with all the Goldmans' demands. He further requested the trial court to construe how much rent was owed under the lease. Alkek based his DTPA claims on grounds that the Goldmans' demands for increased rent violated the lease's warranty of quiet enjoyment and required him to perform obligations not called-for under the lease.

■ By points two and four, the Goldmans claim that the trial court erred in submitting question 8, in overruling their motion for judgment non obstante veredicto and their motion for new trial because

there is no evidence to support all of the elements of a breach of the warranty of quiet enjoyment. In the alternative, appellants claim that the jury's answer to question 8 is against the great weight and preponderance of the evidence. Question 8 asks the jury whether the Goldmans breached the *implied* warranty of quiet enjoyment. Both parties agree that, since the lease contains an express warranty of quiet enjoyment, the express clause governs and abrogates any implied warranty of quiet enjoyment. *Exxon Corp. v. Atlantic Richfield Co.*, 678 S.W.2d 944, 947 (Tex.1984). Since we find that both legally and factually sufficient evidence exists to justify the submission of question 7[2] and the trial court's denial of the Goldmans' motion for new trial, we overrule points two and four.

By their first and third points, the Goldmans contend that the trial court erred in submitting question 7 to the jury, and in overruling their motion for judgment non obstante veredicto because there is no evidence to show all of the elements of a breach of the express warranty of quiet enjoyment. Alternatively, they claim the trial court erred in overruling their motion for new trial because the jury's finding of breach is against the great weight and preponderance of the evidence.[3] The Goldmans claim that Alkek did not prove all of the elements of his cause of action for breach of the warranty of quiet enjoyment because there is no evidence that *their acts* hindered his possession and use of the property to such an extent that he *abandoned* it.

■ Traditionally, a tenant establishes breach of the warranty of quiet enjoyment by showing: (1) an intention of the landlord that the tenant no longer enjoy the premis-

---

**2.** Question 7 asks the jury if the Goldmans breached the *express* warranty of quiet enjoyment. Question 8 concerns the breach of an implied warranty. We address appellants' points 1 & 3 as attacking the evidentiary sufficiency to question 7, the breach of the express warranty of quiet enjoyment.

**3.** The issue of whether the Goldmans breached the express warranty of quiet enjoyment was one upon which Alkek had the burden of proof. When attacking an adverse jury finding on an

issue upon which he did not have the burden of proof, an appellant does so by an "insufficient evidence" point. A "great weight and preponderance" point is reserved for when the jury returns an adverse finding on an issue for which the appellant had the burden of proof. HALL, *Standards of Appellate Review in Civil Appeals*, 21 ST. MARY'S L.J. 865, 909 (1990). We review appellant's point as an insufficiency point.

es; (2) a material act by the landlord that substantially interferes with the intended use and enjoyment of the premises; (3) permanent deprivation of the tenant's use and enjoyment of the premises; and (4) abandonment of the premises within a reasonable time after the commission of the act. *Coleman v. Rotana,* 778 S.W.2d 867, 872 (Tex.App.—Dallas 1989, writ denied); *Fidelity v. Mut. Life Ins. Co. v. Kaminsky,* 768 S.W.2d 818, 819 (Tex.App.—Houston [14th Dist.] 1989, no writ); *Stillman v. Youmans,* 266 S.W.2d 913 (Tex.Civ.App.—Galveston 1954, no writ); *see Quitta v. Fossati,* 808 S.W.2d 636, 643 (Tex.App.—Corpus Christi 1991, writ denied). Although Texas case law generally requires proof of abandonment to establish a breach of the warranty of quiet enjoyment, these cases do not control here. Generally in cases where a breach of the warranty of quiet enjoyment is claimed, a landlord seeks to collect rent payments still remaining under the lease when his tenant has already abandoned the property. By way of defense, the tenant will claim that he is not obligated to pay the remaining installments because the landlord has breached the warranty of quiet enjoyment or has constructively evicted him. If he proves his claim, the lease is effectively rescinded, and the tenant will be excused from any further obligation to pay rent.

The present case differs from most breach of quiet enjoyment cases because Alkek did not seek to avoid paying rent or to effectively rescind the lease. He claimed that he paid and complied with all of the Goldmans' demands, and they continued to insist that he pay additional moneys which they knew were not due and owing under the lease. Such knowing demands, he contended, violated the lease's express warranty of quiet enjoyment and constituted a deceptive trade practice.[4] This dispute centers upon a thirty-year ground lease. The purpose of the lease was "for the development of a retail shopping center and office park." The parties expressly agreed that "the Lessee shall have the right to use the leased premises for any lawful purpose." The lease's warranty of quiet enjoyment reads as follows:

> Lessor covenants and agrees that Lessee on paying the rent and other charges herein provided for and observing and keeping the covenants, conditions, and terms of this lease on Lessee's part to be kept or performed, shall lawfully and quietly hold, occupy, and enjoy the leased premises during the term of this lease *without hindrance or molestation of Lessor* or any person claiming under Lessor except such portion of the leased premises, if any, as shall be taken under the power of eminent domain. (our emphasis added).

■ The conventional application of a breach of the warranty of quiet enjoyment does not obtain here. We hold that Alkek was not required to prove the traditional elements of a breach of the warranty of quiet enjoyment. Submission of the question on breach of this lease's warranty of quiet enjoyment was proper, as was the jury's verdict, if legally and factually sufficient evidence show that the Goldmans breached the express warranty of this lease by hindering Alkek in his occupation and enjoyment of the property.

In considering Alkek's legal and factual sufficiency points, we follow the well-established test set forth in *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.1985); *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Fin. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L.Rev. 361 (1960).

Henry Goldman testified that Alkek approached him and proposed that he rent one of Goldman's properties. John Goldman took no part in the negotiations. His participation in the entire lease project was

---

**4.** Section 17.46(b)(12) defines a false, misleading, or deceptive act or practice as: "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve." *Quitta,* 808 S.W.2d at 644 n. 1; Tex.Bus. & Com.Code Ann. § 17.46(b)(12) (Vernon 1987).

minimal. After some preliminary negotiations, Goldman's attorney drew up the lease agreement which the parties signed. Henry Goldman claimed that, almost immediately, he began to experience problems in getting Alkek to comply with the lease. Goldman and his attorneys sent Alkek demand letters and attempted to negotiate amicably with him. Alkek claims that he complied with the demands Goldman made in each letter and thereafter thought that the dispute was resolved. The Goldmans claimed that Alkek used the negotiation period to stall and avoid complying with the lease. After getting nowhere with him, they were forced to sue.

The Goldmans sent Alkek a notice of termination and filed suit alleging that Alkek was in default for the following reasons: failure to pay taxes and insurance on the property, selling fireworks when the lease required him to honor an exclusive fireworks license the Goldmans already had with a third party, failure to maintain certain areas of the property, especially the Aloha Club (a structure existing on the premises when Alkek entered the lease), failure to pay percentage rentals on meat sales and on sales from the video and liquor stores, failure to include inflation adjustments to the rent as agreed, and failure to keep the books on the Oak Hill Store as agreed.

Henry Goldman testified to the above-listed complaints. However, on cross-examination regarding each allegation, Goldman admitted that Alkek paid the money demanded.[5] When testifying regarding his demands for increased percentage rentals for sales from the video and liquor stores, Goldman was consistently impeached with his deposition testimony. In his deposition, he stated that he never thought he was entitled to receive percentage rentals on sales from the entire Oak Hill Store complex. That construction of the lease had

been his attorney's idea. Alkek testified that when he and Goldman originally began discussing the deal, they talked about the food store only. The trial court determined that the plain language of the lease did not require the rentals the Goldmans demanded (see point five, infra). With regard to the dispute centering on Alkek's failure to restore damage to the Aloha Club, Goldman was again impeached by his deposition testimony in which he stated that he thought a previous tenant, a Mr. Hall, was responsible for the "shabby condition" of the building. The trial court also found that the lease conferred no obligation upon Alkek to restore structures already existing on the property.

In addition, Goldman received $750 per month in rent on Phase II, the undeveloped portion of the property. Henry Goldman admitted he could not rent that portion of the property more favorably than on the terms he had with Alkek. Although the lease specifically allowed Goldman to rescind on Phase II and retake that portion of the property, he stated that he did not wish to terminate Alkek's lease on that portion.

Alkek testified that he thought the Goldmans wanted to terminate the lease and take the property for themselves because the Oak Hill Food Store was very profitable. Alkek's attorneys showed that Goldman stated in his deposition that he had "wanted to try that" himself (having a convenience store for himself). Finally, it was undisputed that Alkek paid all the money the Goldmans demanded of him after receiving their demand letters. Still, Henry Goldman admitted that he filed suit and sent the termination notice even though Alkek had paid or complied with all demands, except those regarding the claim for rentals from sales of the video and

---

5. Section 12.012 of the lease requires the Goldmans to give Alkek notice of any default. Under the lease, Alkek is then allowed thirty days, or a reasonable time to cure such default if cure is not possible in thirty days. In determining the issue of whether Alkek breached the lease, the jury was instructed that they must find a breach that was material. Appellants did not object to this instruction. The jury found *all* issues in Alkek's favor. After carefully reviewing all of the evidence again, we find that legally and factually sufficient evidence support the jury's finding that there was no material breach on Alkek's part.

liquor store and the Aloha Club.[6] Goldman admitted that his actions had hindered Alkek.

Alkek's theory of the case was that the Goldmans demanded extra rentals and filed suit as a subterfuge designed to force Alkek to vacate the premises so that they could take the facilities for themselves. Alkek stated that the Goldmans interfered with his use of the property by their repeated demands for additional rent and by their lawsuit and notice to terminate. He stated that these actions interfered with his right of possession and made his future possession uncertain, thereby causing him to abandon his construction plans. Alkek's inability to expand as he had intended resulted in lost profits to his business.

■ The evidence is sufficient to show that the Goldmans' demands for payment and their notice of suit and termination hindered Alkek in his occupation and enjoyment of the leased premises for purposes for which they were leased. Further, the evidence is sufficient to show a breach of this lease's warranty of quiet enjoyment. Such breach caused Alkek to abandon his plans for further development of the site and resulted in substantial lost profits (*see* point six, *infra*).

■ The Goldmans claim that they cannot be liable for a breach of the warranty of quiet enjoyment absent a showing that their notices of default and termination, and their lawsuit, constitute a malicious prosecution. The Goldmans further argue that Alkek's claim merely involves a breach of contract, for which DTPA damages are not available, and that the record contains no evidence or insufficient evidence of the kinds of acts which can constitute a breach of the warranty of quiet enjoyment. While it is true that a mere breach of contract claim is not actionable under the DTPA, Alkek's counter-claim alleged that the Goldmans breached the warranty of quiet enjoyment, thereby subjecting Alkek to obligations not required under the lease. *See Quitta,* 808 S.W.2d at 644; Tex.Bus. & Com.Code Ann. § 17.46(b)(19) (Vernon 1987). *Quitta* involved nothing more than a breach of contract because the record contained no evidence of overreaching, victimization, unconscionable, false, or deceptive acts. *Quitta,* 808 S.W.2d at 645. Moreover, we would not be understood to hold that the Goldmans are liable for breach of this warranty simply because they failed to prove that Alkek breached the lease. We hold that the evidence is both legally and factually sufficient to uphold the jury's finding that Goldman breached this warranty based upon the evidence discussed above. The evidence is sufficient to support the kind of overreaching and malicious prosecution that the Goldmans claim is required. Alkek impeached Henry Goldman by showing his expectations of what was owed under the lease had changed. Also, considering, the long term of the lease and the tenant's substantial investment, which would inure solely to the benefit of the landlord upon termination, the evidence in this case is sufficient to show that the Goldmans' demands and lawsuit were knowingly pursued in an overreaching and deceptive manner. We overrule appellants' first and third points of error.

■ By point six, the Goldmans claim that the jury's damage award is not supported by factually sufficient evidence, is against the great weight and preponderance of the evidence, and is excessive. Specifically, the Goldmans argue that the $100,000 the jury awarded as damages for the Goldmans' breach of the warranty of quiet enjoyment consists primarily of lost profits for which the supporting evidence was too speculative. To recover lost prof-

---

**6.** One of the most intensely contested issues was the question of the amount Alkek owed under the rent escalation clause. The lease contains a provision by which Alkek agreed to pay, on Phase II of the property, an adjustment in the minimum guaranteed rental based upon inflation as reported in the Consumer Price Index. Alkek maintained throughout that Goldman made repeated, inconsistent, and incorrect demands for CPI-adjusted rentals. Alkek paid over $4,000 in CPI-adjusted rentals, as demanded by the Goldmans. In repeated demonstrations before the jury, the Goldmans were unable to clearly establish the amount of CPI rentals they alleged were due.

its, sufficient evidence must be produced to enable the jury to determine the net amount of lost profits with reasonable certainty. *Holt Atherton Indust., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992); *Frank B. Hall & Co. v. Beach Inc.*, 733 S.W.2d 251, 258 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.).

Alkek testified that shortly after opening the store, but particularly in 1988, he planned to expand the Oak Hill Food Store by adding a diesel fuel island and a deli chicken operation. Alkek explained that the fuel pumps were overcrowded. Large trucks often fueled-up, and he did not have the diesel facilities to service them all. Moreover, the large trucks prevented cars from reaching the gasoline pumps because the space was inadequate. Alkek testified that his plans to expand were always frustrated by the Goldmans.

John New, a convenience store owner and wholesale distributor, testified regarding Alkek's lost profits. Warren Alkek is one of New's customers. New testified that he has a degree in marketing from Texas A & M University. He owns and operates five convenience stores in the Victoria area and is familiar with running a convenience store. New did not do a written analysis of the Oak Hill Store, but he estimated Alkek's lost profits based upon his own sales of gasoline to Alkek, information Alkek gave him on Alkek's inside sales, and his nine years' experience in the convenience store business.

New testified that he and Alkek had discussed the expansion plans together. He determined that the amount of monthly profits Alkek would have made over the two years prior to the lawsuit, had Alkek been able to install the additional fuel pumps and the deli cafe, was $6700. New's direct testimony contradicts appellants' claim that New did not calculate the damages over any particular time period. New stated that Alkek's past sales did not fluctuate greatly. From his own knowledge of convenience stores and Alkek's past sales, New estimated that Alkek could

make between eight and twelve cents profit on each gallon of gas. It was his conservative estimate that a dozen trucks a day would refuel at the Oak Hill Store averaging 112 gallons per fill-up. Thus, Alkek would sell some 40,000 additional gallons of fuel per month. He further figured that gasoline sales would increase by 10,000 gallons per month. Chicken sales from the deli cafe would increase the total inside sales of the store by some $300 per day, with an expected profit of thirty percent. Utilizing these numbers, New testified that the planned expansion would have given Alkek an additional $6700 per month in profits.[7]

The Goldmans complain that New did not account for the Oak Hill Store's operating expenses, the cost of goods sold, or the amount of money Alkek would have spent on expansion and remodeling. Additionally, the Goldmans complain that New lacked documentation, his estimates were too speculative, and New was an interested witness. New's bias, the costs of goods, and the expansion expenses were all proper subjects for cross-examination. The Goldmans' attorneys did point out New's own interest in the matter, but did not challenge his numbers. Neither did they cross-examine Alkek on the issue of costs. New's testimony provides legally sufficient evidence of lost profits based on objective facts, figures, or data. *Holt Atherton*, 835 S.W.2d at 84–85. Written documentation supporting damage estimates affects the weight of evidence on damages, but is not required for admissibility. *Id.*

Alkek had also claimed as part of his damages approximately $14,000 that he overpaid in excess percentage rentals. We hold that the award of damages is not against the great weight and preponderance of the evidence.

The Goldmans further complain that the award for lost profits is against the great weight and preponderance of the evidence because the only other evidence of the Oak Hill Store's net profits was a 1986 income tax statement showing $5,830 for the entire

---

7. Calculating $6,700 worth of lost profits per month over a two year period yields $160,800 in

lost profits—some $60,800 more than the jury awarded.

year. New testified that Alkek planned his renovations because there was a great untapped demand that he had not anticipated. Alkek earlier stated that the first few years of the business were slow because he was learning. It was undisputed that Alkek paid no percentage rentals for the first year because sales did not exceed the $900,000 minimum. The jury had the benefit of the tax return before them in deliberating on the amount of damages. They did not award the entire amount New estimated. New was shown to know the convenience store business and Alkek's business. The award was supported by legally sufficient evidence, was not excessive, nor was it so against the overwhelming weight and preponderance of the evidence that it was clearly wrong or manifestly unjust.

By their fifth point of error, the Goldmans claim that the trial court erred in overruling their motion for new trial and their motion to modify, correct, or reform the judgment, because the court improperly construed the contract. The jury found that Henry Goldman told Alkek that meat sales would be excluded from "gross sales" in determining percentage rentals. The trial court construed the lease such that "gross sales" encompassed only those sales other than meat sales made from the Oak Hill Store. It further decreed that "gross sales does not include sales from any other establishment located on the leased premises and does not include interest, fuel commissions, insurance proceeds and rental payments."

The lease reads in pertinent parts as follows:

Sec. 3.01 It is contemplated that the Lessee shall build at Lessee's own expense, a structure to house a quick service food market, hereinafter called the Oak Hill Store, lease space and also a series of fuel pumps and dispensers on that portion of land in the far northeasterly side of said property and utilizing three hundred fifty (350) feet of highway frontage.

Section 3.02 provides for a percentage rental of all "gross sales" in addition to a minimum guaranteed rental. Section 3.03 of the lease defines gross sales as follows:

"Gross sales" shall be construed to include the entire amount of the sales price, whether for cash or otherwise, of all sales of merchandise ... services and other receipts whatsoever of all business conducted *in or from the demised premises devoted to the Oak Hill Store and its related services,* including but not limited to the fuel pumps or dispensers located on the demised premises, mail or telephone orders received or filled at the demised premises, deposits not refunded to purchasers, orders taken, although said orders may be filled elsewhere, sales through vending machines or other devices, and sales by any sublessee, concessionaire or licensee or otherwise in said premises. Should Lessee elect not to construct and operate the Oak Hill Store then Gross Sales shall be construed to include the entire amount of the sales price, whether for cash or otherwise, of all sales of merchandise ... services and other receipts whatsoever of all business conducted in or from the entire demised premises. (our emphasis added).

The Goldmans contend that the lease calls for percentage rentals based upon the gross sales of all businesses housed in the structure Alkek built. Alkek maintains that the lease requires him to pay percentage rentals only for gross sales from the food store.

The construction of an unambiguous lease is a question of law for the court to decide. We utilize general rules of contract construction to determine the intention of the parties as reflected by the agreement. *See Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 727–28, 731 (Tex.1981). We are not to interpret clauses in such a way that they are rendered meaningless or ineffective. *See Ervay Inc. v. Wood,* 373 S.W.2d 380, 384 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.). Words are to be given their common ordinary meaning. *Ferrari v. Bauerle,* 519 S.W.2d 144, 146 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). A lease is to be construed against its writer. *Golden Spread Oil Inc. v. American Petrofina Co. of Texas,* 431

S.W.2d 50 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).

■ Reading the lease as a whole, we find no error in the trial court's construction. The express purpose of the lease was for the Lessee to build a structure to house *"a quick service food market."* Rent was fixed upon a base amount plus a percentage of gross sales. Gross sales included all receipts whatsoever of all business conducted from the demised premises *devoted to the Oak Hill Store,* and sales from any sublessee, concessionaire or licensee *in said premises.* The lease then stated that if Alkek did not build the Oak Hill Store, then gross sales would include "the entire amount of the sales price ... of all sales of merchandise, services and other receipts whatsoever of all business conducted from the entire demised premises." The agreement states that gross sales shall not include certain taxes or *exchanges of merchandise between the stores of Lessee, if any,* thereby showing that the parties contemplated that Alkek would have "other stores."

The argument revolves around what was meant by "demised premises." In § 3.03, in the first definition of gross sales, "demised premises" was qualified as the premises "devoted to the Oak Hill Store." The statement that gross sales would include sales by sublessees or licensees *in said premises,* we also hold to be a reference to the area of the Oak Hill Store, as previously defined. Only if the Oak Hill Store was not built and operated was the percentage rental to include all receipts from *the entire demised premises.* The Goldmans argue that they should receive rentals from all sales of goods and services from the entire structure. The language of the lease does not reflect that the parties contemplated that Alkek would pay percentage rentals on the gross sales of any other business than the food store. We overrule point five.

■ By point eight, the Goldmans complain that the award for attorney's fees is excessive and does not predicate the award on the Goldmans' success or failure on appeal. The judgment awards attorney's fees to Alkek, and then grants a credit from the total amount for each step to an appeal if such step is not taken. Alkek contends that the Goldmans' point is not preserved because they complained below that the award was unconditional. Given the fact that the judgment awards a total amount of fees, with credits given for foregoing the right of appeal, were we to uphold that portion of the judgment, we would be awarding fees against a prevailing party. This Court may not penalize a party for taking a successful appeal by taxing him with attorney's fees should he take such action. *Southwestern Bell Tel. v. Vollmer,* 805 S.W.2d 825, 834 (Tex. App.—Corpus Christi 1991, writ denied); *Rittgers v. Rittgers,* 802 S.W.2d 109, 115 (Tex.App.—Corpus Christi 1991, writ denied).

■ The Goldmans' complaint that the fees were unconditionally awarded is sufficient to preserve the claim that the fees are excessive. The judgment awards fees for services not yet rendered and it awards them indiscriminately, despite which party prevails. Point eight is sustained.

■ By point ten, the Goldmans claim that the $4,900 in damages are not supported by factually sufficient evidence, are against the great weight and preponderance of the evidence and are therefore excessive. Alkek testified that an indemnity clause in Galen May's contract of assignment obligated him to pay May's attorney's fees arising from the present litigation. When asked how much he owed May, Alkek answered, "I think it is like $4,900." No other evidence in the record concerns May's attorney's fees. The Goldmans argue that Alkek failed to prove the reasonableness and necessity of the fees and the evidence is therefore insufficient to support this award. We agree. Although Alkek claims the $4,900 as a debt he owed May under the indemnity agreement and not as fees, attorney's fees incurred in prosecuting a suit or defending against a wrong are not ordinarily recoverable as actual damages. *Houghton v. Wholesale Elec. Supply,* 435 S.W.2d 216, 220 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.). Alkek had to

show that the fees were reasonable and necessary. TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986); *see Bettye-Jen, Inc. v. Riley,* 614 S.W.2d 623, 624 (Tex.Civ. App.–Austin 1981, no writ). The evidence is insufficient to support the jury's award. We sustain point ten.

By point seven, the Goldmans aver that Maureen Alkek's Release of Judgment entitles them to a 50% reduction in the total amount of the judgment. After this appeal was filed, Maureen Alkek executed a Partial Release of Judgment, releasing John and Henry Goldman from all liability. The Goldmans now claim that, since the judgment issued in the names of Warren and Maureen Alkek, Maureen's release should reduce the amount of the judgment by one-half. We disagree. A release is an absolute bar to any right of action arising from the obligation discharged. It conclusively estops the releasor from enforcing the claim released. 64 Tex.Jur.3d *Release* § 22 (1989). Assuming without deciding that appellants can prove that a valid release exists,[8] they may be able to enjoin enforcement of the judgment by virtue of the release. However, this Court may not reduce the judgment by the apparent amount of Maureen Alkek's interest. Neither can appellees use Maureen Alkek's release as a vehicle to eliminate her name from the judgment.[9] We hold that appellants are not entitled to a fifty percent reduction of the judgment.

We reform the judgment to eliminate $4,900 awarded for the Goldman's refusal to consent to assignment. We further reform the judgment to read that the $20,000 in attorney's fees for appeal to this Court, the $7,500 and $1,500 as attorney's fees for application for writ of error and appeal to the Supreme Court of Texas will be awarded only if the Goldmans do not prevail on appeal beyond this Court. Because we affirm the judgment as modified, Alkek is still a prevailing party and entitled to his

attorney's fees on appeal. Since the Goldmans have prevailed on two of their points here, eighty percent of the costs of appeal will be assessed against the Goldmans, twenty percent against Alkek. The judgment of the trial court is AFFIRMED in all other aspects.

*OPINION ON MOTION FOR REHEARING*

March 11, 1993

We submit the following to amend our holding of February 4, 1993. In that opinion, we stated that we reformed the judgment to condition the award of appellate attorney's fees to Alkek upon the Goldmans' failure to prevail on appeal beyond this court. The $20,000 award of attorney's fees for appeal to this Court, the $7,500 and $1,500 awarded as attorney's fees for application for writ of error and appeal to the Supreme Court of Texas will be awarded only if the Goldmans do not prevail on appeal in this court and beyond. We would not be understood to hold that the award of attorney's fees for appeal to this court is conditioned on the Goldmans' failure to prevail on appeal beyond this court. The judgment shall read that the award of appellate attorney's fees to Alkek is conditional upon the Goldmans' failure to prevail on appeal.

In addition, we agree with the Goldmans' claim that they are entitled to an adjustment in the amount of appellate attorney's fees since they were partially successful on appeal. The Goldmans successfully challenged the award of May's attorney's fees and the trial court's unconditional award of appellate attorney's fees. An appellee is not entitled to an award of appellate attorney's fees for that portion of fees attributable to and unsuccessful defense of the case. *Southwestern Bell Tel. v. Vollmer,* 805 S.W.2d 825, 834 (Tex.

---

8. The burden of establishing an effective and valid release rests on the party released. 64 Tex.Jur.3d *Release* § 35 (1989). A release can be executed by one who owns a claim or right against another. 64 Tex.Jur.3d *Release* § 1 (1989).

9. Appellants originally argued that the erroneous inclusion of Maureen Alkek rendered the judgment void because it awarded damages to a person not a party to the suit. We express no opinion on this issue since appellants abandoned it in lieu of the present argument.

App.—Corpus Christi 1991, writ denied); *see also Smith v. Smith,* 757 S.W.2d 422, 426 (Tex.App.—Dallas 1988, writ denied). The determination of an award of attorney's fees is a severable claim. We therefore reverse the award of attorney's fees for appeal to this court and remand to the trial court for a determination of the reasonable amount of appellate attorney's fees to be awarded to appellee in view of the fact that appellant was partially successful in this appeal. The trial court's judgment is, in all other respects, affirmed.