Opinion issued March 13, 2003







 
 


 



In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00029-CV




CAROL E. LAZELL, D.D.S., Appellant

V.

ELIZABETH STONE D/B/A THE STONE KITCHEN, Appellee




On Appeal from County Civil Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 747290




O P I N I O N

          Appellant, Carol D. Lazell, D.D.S. (“Lazell”) sued appellee, Elizabeth Stone
d/b/a The Stone Kitchen (“Stone”) for breach of a commercial lease of real property. 
Stone counterclaimed for wrongful and constructive eviction, breach of lease, breach
of express warranty and breach of the implied warranty of suitability. Following a
bench trial on September 10, 2001, the court entered judgment and awarded damages
in favor of Stone.
          We address (1) whether the trial court erred in awarding damages to appellee,
and (2) whether the damage award was improper because appellee failed to pay rent. 
          We affirm.
Background
          On October 1, 1997, Stone entered into a commercial lease agreement (the
“Lease”) with The Sunset Syndicate (“Sunset”). The Lease constituted approximately
1700 square feet of space, known as 2419 Sunset, in Houston, Texas, to be used for
professional offices (the “Premises”). The initial lease term was for the period of
October 1, 1997 through September 30, 1998. The Lease was subsequently amended,
extending the term through September 30, 1999. Stone is in the food catering
business and used the Premises for offices, storage of files, and storage of various
catering supplies and equipment (“equipment”). Sunset sold the property to Lazell,
Lazell’s brother, and Lazell’s husband on June 4, 1999. Lazell acted as the property
manager for the Premises. The Lease was apparently assigned to the new owners as
part of the transaction. 

          Before finalizing the sale of the property to Lazell, Sunset had construction
workers perform an asbestos abatement on the property on June 1 and 2 of 1999. 
When Stone attempted to enter the Premises on June 1, she and her employees were
denied access because of the abatement. Stone stated that she had not been informed
that the abatement would be taking place, and that if she had, she would have
removed her equipment in order to protect it from potential exposure. Sunset testified
that they had sent Stone a letter informing her of the work to be done. On
approximately June 4, 1999, Stone contacted Sunset and requested documentation as
to whether the asbestos abatement had been done properly because she did not want
to enter the Premises if it were unsafe or if the equipment had been exposed to
asbestos. It was at that time that Sunset informed Stone that the Premises had been
sold to Lazell. 
          Within the next few days, Stone tried to contact Lazell and went to the
Premises to talk to Lazell. The locks on the Premises had been changed, so Stone
knocked on the door. Lazell’s brother answered the door, informed Stone that the
locks had been changed, and that Stone and her employees were no longer permitted
to come on the Premises. Therefore, Stone did not go back on the Premises except
to remove some equipment located in and next to the garage. Stone was never
provided with any documentation, from either Sunset or Lazell, verifying whether the
abatement had been done properly. Because Stone did not know whether the
equipment was safe to use after the abatement, she did not attempt to remove any of
it from the Premises.
Sufficiency of the Evidence
          In two points of error, appellant appears to contend that the evidence is legally
and factually insufficient to sustain the trial court’s award of damages to appellee and
its denial of appellant’s claims. Because appellant’s issues are so closely related, we
address them together.
Standard of Review
            When the trial court acts as a fact finder, we review its findings under the legal
and factual sufficiency standards. In re Doe, 19 S.W.3d 249, 253 (Tex. 2000). When
this Court reviews legal sufficiency, we review the evidence in a light that tends to
support the finding of the disputed facts and disregard all evidence and inferences to
the contrary. Lee Lewis Const., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001). 
If more than a scintilla of evidence exists, it is legally sufficient. Id. More than a
scintilla of evidence exists if the evidence furnishes some reasonable basis for
differing conclusions by reasonable minds about a vital fact’s existence. Id. at 782-83. In reviewing a factual sufficiency issue, we conduct a neutral review of all the
evidence. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). We reverse the ruling for
factual insufficiency of the evidence only if the ruling is so against the great weight
and preponderance of the evidence as to be manifestly erroneous or unjust. Minucci
v. Sogevalor, S.A., 14 S.W.3d 790, 794 (Tex. App.—Houston [1st Dist.] 2000, no
pet.). Analysis
          Appellant asserts that she is not liable for any damages sustained by appellee
due to the asbestos abatement procedure because the breach occurred before the
property was transferred to her and the other owners. Appellant also contends that
there was no evidence of asbestos damage to appellee’s Equipment and that, if there
was a breach, Sunset was the liable party. Further, appellant asserts that appellee
defaulted on the Lease by not paying rent, and thus cannot complain based on
constructive eviction grounds. 
          The following is a partial list of the findings of facts and conclusions of law
made by the trial court:
Findings of Fact:
1.Title to the Premises was transferred to Carol E. Lazell (“Dr.
Lazell”), Douglas J. Lazell and Dennis R. Mosier on June 4, 1999
(Dr. Lazell, Douglas J. Lazell and Dennis R. Mosier are referred
to collectively as the “New Owners”). As a result of the transfer
of title, the New Owners were assigned the Lease and became the
Landlord under the Lease. Ms. Stone’s $1,500 security deposit
was transferred to Dr. Lazell via check dated June 10, 1999.
 
2.Within a few days of June 4, 1999, Ms. Stone attempted to gain
access to the Premises. Ms. Stone wanted to speak with the New
Owners to find out if they had any verification that her
Equipment/Inventory had not been exposed to asbestos dust or
other contamination. Ms. Stone could not gain access to the
Premises because the lock to the front door had been changed. 
One of the New Owners came to the door and told Ms. Stone that
she was no longer welcome in the Premises. The New Owners
did not provide Ms. Stone with any verification that her
Equipment/Inventory had not been exposed to asbestos dust or
other contamination.
 
3.The foregoing facts comprise a breach of the Lease by the
Landlord.
 
4.The foregoing facts comprise a breach of an express warranty in
the Lease by the Landlord.
 
5.The foregoing facts comprise a breach of the implied warranty
that the Premises was suitable for its intended purpose by the
Landlord.
 
6.The foregoing facts comprise an unjustified eviction by the
Landlord.
 
7.The foregoing facts demonstrate that Ms. Stone was
constructively evicted from the Premises. The foregoing facts
demonstrate that; [sic] (1) the Landlord intended that Ms. Stone
no longer enjoy the Premises; (2) the Landlord substantially
interfered with Ms. Stone’s use and enjoyment of the Premises;
(3) Ms. Stone was permanently deprived of the use and enjoyment
of the Premises; and (4) Ms. Stone abandoned the Premises after
such events, and as a direct result of such events. 
 
8.As a result of the foregoing facts, Ms. Stone was justified in
abandoning the Premises and discontinuing rent payments for
June, July, August and September of 1999.

Conclusions of Law:
 
1.Ms. Stone did not breach the Lease.
 
          2.       The Landlord breached the Lease.
 
          3.       The Landlord breached an express warranty under the Lease.
 
4.Sunset Syndicate assigned all rights and responsibilities under the
Lease to the New Owners. As assignee, the new Owners became
responsible for all of the Landlord’s obligations under the Lease.
 
5.The Landlord’s actions support a finding that the Landlord
breached the implied warranty that the Premises was suitable for
an intended purpose. As such, Ms. Stone was justified in not
making any rent payments for June, July, August or September of
1999.
 
6.The Landlord’s actions support a finding of constructive eviction.

          Appellant asserts that she is immune from all liability for a contractual breach
that occurred before the property was transferred to her. Here, the breach was a
breach of an express warranty in the Lease, that the Premises had no asbestos. The
Lease provides as follows:
Landlord warrants and represents that this Property does not contain
“Hazardous Materials”, as that phrase is defined herein. For purposes
of this provision, the phrase “Hazardous Materials” shall mean and
include . . . asbestos.
Appellant correctly refers to the controlling principle: “The transferee [of an interest
in leased property] will not be liable for any breach of the promise which occurred
before the transfer to him.” Regency Advantage Ltd. P’ship v. Bingo Idea-Watauga,
Inc., 936 S.W.2d 275, 277 (Tex. 1996) (citing Restatement (Second) of Property
§ 16.1(3) (1977)). The court found that appellant and the other owners took title to
the Premises on June 4, 1999 and that the asbestos abatement began on June 1, 1999. 
However, in situations in which the original lessor has breached a lease prior to
transferring the lease to its assignee, the other party to the lease may be entitled to
terminate the lease for the past breaches and, if so, the transferee’s position under the
transfer may be affected accordingly. Regency, 936 S.W.2d at 277-78 (citing
Restatement (Second) of Property § 16.1 cmt. h (1977)). In Regency, although
the assignee was not liable to the tenant for a breach of the lease that occurred before
the lease was assigned to the assignee, the court held that the tenant may have a right
to terminate or a defense against payment of rent to the assignee. Id. at 278. 
Therefore, as in Regency, although appellant was not initially liable for the breach of
the Lease, appellee was entitled to terminate the Lease or withhold payment of rent. 
          Appellant also contends that there was no evidence of asbestos damage to
appellee’s Equipment, and thus, appellee has no factual basis for damages. Appellee
requested verification from both Sunset and appellant that the abatement had been
performed properly and her Equipment was safe to use. Appellee received no such
verification from either party. Subsequently, appellee was locked out of the Premises
and told she was no longer welcome on the Premises by appellant’s co-owner. 
Appellant has offered nothing in the record to demonstrate that there was in fact, no
asbestos contamination at the Premises. Logically, the facts point to quite the
opposite. Appellant admits that an abatement for asbestos took place on the Premises
beginning on June 1, 1999. Abatement is the act of abating, which means to put an
end to or to reduce in degree or intensity. Merriam Webster’s Collegiate
Dictionary 1, 2 (10th ed. 1993). Therefore, if there was no asbestos on the Premises
to begin with, there would have been no need for asbestos abatement. The Lease
contained an express warranty that the Premises did not contain asbestos. As we
stated previously, appellee had the right to either terminate the Lease or had a defense
against payment of rent. See Regency, 936 S.W.2d at 278. The trial court made
findings of fact and conclusions of law that the facts indicated a breach of the Lease
by the Landlord as well as a breach of an express warranty. We find that the record
supports both legal and factual sufficiency of the trial court’s findings. 
          Appellant also contends that appellee defaulted on the Lease by not paying rent
for the months of June, July, August, and September, and, therefore, cannot complain
based on constructive eviction grounds. The essential elements of constructive
eviction are (1) an intention on the part of the landlord that the tenant shall no longer
enjoy the premises, (2) a material act by the landlord that substantially interferes with
the tenant’s intended use and enjoyment of the premises, (3) an act that permanently
deprives the tenant of the use and enjoyment of the premises, and (4) abandonment
of the premises by the tenant within a reasonable time after the commission of the
act. Holmes v. P.K. Tubing, Inc. 856 S.W.2d 530, 539 (Tex. App.—Houston [1st
Dist.] 1993, no writ); Columbia/HCA of Houston, Inc. v. Tea Cake French Bakery
and Tea Room, 8 S.W.3d 18, 22 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). 
The landlord’s intent may be inferred from the circumstances. Holmes, 856 S.W.2d
at 539; Columbia/HCA, 8 S.W.3d at 22. 
          Here, the trial court found that the facts demonstrated that appellee was
constructively evicted from the Premises. We agree. Appellant’s intention that
appellee no longer enjoy the Premises can be inferred from the combination of
appellant’s changing the locks on the Premises and informing appellee that she was
no longer welcome on the Premises. This took place in early June when the June rent
was only a few days late. Appellant did not give appellee notice of default until June
27, 1999, well after appellant had changed the locks and informed appellee that she
was no longer welcome on the Premises. These actions also constitute a material act
by appellant substantially and permanently interfering with appellee’s intended use
and enjoyment of the Premises. Because of these actions, appellee did not make any
further attempt to retrieve her Equipment from the Premises or to return to the
Premises, thus effectively abandoning the Premises in early June. We find that there
was more than a scintilla of evidence to support a constructive eviction claim;
therefore, the evidence was legally sufficient to support the trial court’s finding. We
also find that the trial court’s ruling is not so against the great weight and
preponderance of the evidence as to be manifestly erroneous or unjust, and is
therefore, factually sufficient.
          Generally in cases where a breach of the warranty of quiet enjoyment


 is
claimed, a landlord seeks to collect rent payments still remaining under the lease
when his tenant has already abandoned the property. Goldman v. Alkek, 850 S.W.2d
568, 572 (Tex. App.—Corpus Christi 1993, no writ). By way of defense, the tenant
will claim that he is not obligated to pay the remaining installments because the
landlord has breached the warranty of quiet enjoyment or has constructively evicted
him. Id. If he proves his claim, the lease is effectively rescinded, and the tenant will
be excused from any further obligation to pay rent. Id. A commercial landlord
impliedly represents that the premises are suitable for their intended commercial use
and will remain in a suitable condition. The tenant’s obligation to pay rent and the
landlord’s implied warranty of suitability are therefore mutually dependent. Davidow
v. Inwood N. Prof’l Group–Phase I, 747 S.W.2d 373, 377 (Tex. 1988). 
          Although the original breach occurred before title was transferred to appellant,
appellee had the right to terminate or a defense against payment of rent to appellant. 
See Regency, 936 S.W.2d at 277-78. Further, appellee was excused from paying rent
when she was constructively evicted from the Premises. We hold that the evidence
was legally and factually sufficient to support the trial court’s findings, and overrule
appellant’s points of error.Conclusion
          We affirm the judgment of the trial court.
 
                                                       /s/   Laura C. Higley 
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Higley.