Opinion issued May 18, 2023



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00463-CV

———————————

**BAGBY 3015, LLC AND AMIR ANSARI, Appellants**

**V.**

**BAGBY HOUSE, LLC, Appellee**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-13086**

---

## O P I N I O N

In this accelerated interlocutory appeal, Bagby 3015, LLC and Amir Ansari contend that the trial court erred in denying their motion to dismiss some aspects of Bagby House, LLC's claims under the Texas Citizens Participation Act. We agree. Therefore, we reverse the trial court's denial of Bagby 3015 and Ansari's motion to

dismiss Bagby House's claims for breach of contract and breach of the warranty or covenant of quiet enjoyment to the extent these claims are based on Bagby 3015 and Ansari's making of false reports to governmental authorities, and we render judgment dismissing these aspects of Bagby House's contract and quiet-enjoyment claims. We otherwise affirm the denial of the motion to dismiss and remand this cause to the trial court for further proceedings consistent with our opinion.

## BACKGROUND

This appeal arises out of a commercial landlord–tenant dispute. The tenant, Bagby House, sued its landlord, Bagby 3015, and Bagby 3015's owner and managing member, Ansari. Bagby House alleges multiple causes of action, including claims for breach of contract (the lease), theft or conversion, deceptive trade practices, breach of an express or implied warranty or covenant of quiet enjoyment, and fraud. Based on these causes of action, Bagby House alleges and seeks to recover damages, fees, and costs totaling more than $2,000,000.

Bagby House runs a restaurant on the leased premises. Among other things, it alleges Bagby 3015 and Ansari breached an implied warranty or covenant of quiet enjoyment and the corresponding provision, or another provision, of the lease by:

- burglarizing the restaurant, breaking into its safe and damaging or destroying the safe in the process, and stealing $6,000 from it;

- cutting holes in the restaurant's floors after business hours;

- ripping wires from breaker boxes while the restaurant was closed;

2

- removing umbrella dining tents that the restaurant had leased;

- ripping data and electric cables out from credit card processing equipment;

- sending people who feigned being repairmen needing to make nonexistent emergency repairs during the restaurant's peak business hours;

- locking Bagby House out of the premises despite timely payment of rent;

- calling the electric company to try and have it end service to the restaurant, notwithstanding that the service account is in the restaurant's name;

- making 911 calls falsely claiming the restaurant was on fire or collapsing;

- making a report to the city's fire marshal falsely claiming the restaurant was on fire or contained dangerous fire hazards;

- making reports to the city's health department falsely claiming the restaurant lacked a code-compliant grease trap or required permits; and

- summoning peace officers to the restaurant on the false pretense that Bagby House was trespassing on the premises or out of business.

Bagby 3015 and Ansari moved to dismiss Bagby House's contract and quiet-enjoyment claims under the Texas Citizens Participation Act. In particular, Bagby 3015 and Ansari argued that the claims of false reports or complaints to governmental authorities are based on or made in response to communications Bagby 3015 and Ansari made in the exercise of their right to petition and thus are subject to the Act. Given that Bagby House cannot make a *prima facie* case in support of these claims, Bagby 3015 and Ansari further argued, these claims had to be dismissed. In addition, they requested fees, costs, expenses, and sanctions.

In its response, Bagby House noted that though Bagby 3015 and Ansari sought dismissal of its claims for breach of the lease and the express or implied warranty or

3

covenant of quiet enjoyment in their entirety, their supporting argument solely pertained to the claims concerning false reports to governmental authorities. Bagby 3015 and Ansari, Bagby House maintained, were silent as to the numerous other activities Bagby House alleged in support of these claims, such as the burglary and sabotage of the premises. On this basis, Bagby House argued that the trial court should deny Bagby 3015 and Ansari's motion to dismiss in its entirety.

Bagby House also submitted evidence in support of its claims for breach of the lease and the express or implied warranty or covenant of quiet enjoyment, arguing it had thereby made a *prima facie* case even as to the aspects of these claims that are subject to the Act. Accordingly, Bagby House posited that the trial court was required to deny Bagby 3015 and Ansari's motion to dismiss in any event.

Bagby House's evidence consisted of a declaration made by Donald R. Bowie, Bagby House's owner and managing member, and several attachments. The attachments included a copy of the lease, e-mails about the renewal of the lease, two Houston Police Department forms that reflect the existence of incident reports made on two separate occasions, text messages between the restaurant's manager and chef discussing interactions with the city's fire marshal, and a report made by one of the city's building inspectors.

With respect to Bagby House's contract and quiet-enjoyment claims, Bowie declared that Bagby 3015 and Ansari occupied the restaurant one morning and

4

"destroyed and burglarized Bagby House's safe, stealing $6,000 in cash." He declared that on another occasion "they again came into" the restaurant "during the morning and cut holes in the floors," "ripped electrical wires from live electrical boxes," "ripped out data and electric cables to the credit card processing machines," and "padlocked" the restaurant even though all rent due had been paid. Bowie further declared that Bagby 3015 and Ansari "contacted the electric utility company" and "attempted to convince the utility company to discontinue electrical service" to the restaurant, "even though the service was in Bagby House's name."

Bowie also made several representations about Bagby House's false-report claims in particular. These false-report representations consist of the following:

16.     On March 26, Bagby 3015 and Ansari falsely called in a report to the Houston Police Department that the [restaurant] was on fire or collapsing when in fact the [restaurant] was neither on fire nor collapsing. Attached as Exhibit A-3 is a true and correct copy of the incident reports made by the Houston Police Department concerning this false report.

17.     Also on March 26, they made a false report to the Fire Marshal of the City of Houston that the [restaurant] was a fire hazard. The Fire Marshal came to the [r]estaurant during business hours and inspected the [restaurant], but found no fire hazards and told Bagby House's employees that his visit had been a huge waste of his time. Attached as Exhibit A-4 is a true and correct copy of text messages between Bagby House employees recounting the Fire Marshal's inspection.

18.     On March 26, they also falsely reported to the City of Houston Department of Building Code Enforcement that Bagby House was using a non-code compliant grease trap [i]n the [restaurant]. As reflected in the City of Houston building inspector's report attached as

Exhibit A-5, when the building inspector visited the [restaurant] he did not find that the [restaurant's] grease trap did not comply with the City of Houston's Building Code, but instead found only minor deficiencies which were quickly and easily remedied by Bagby House.

19. On March 26, Bagby 3015 and Ansari, accompanied by their lawyer, came to the [restaurant] with a Harris County Precinct 1 deputy constable and attempted to convince him to remove Bagby House from the [restaurant] by falsely claiming that Bagby House was either out of business or trespassing. I personally heard these false claims being made to the deputy constable and other officers on[-]site. When the deputy constable determined that the [r]estaurant was neither out of business nor trespassing, nor did Bagby 3015 have any court order requiring the eviction of Bagby House from the [restaurant], the deputy constable and officers told Bagby [3015], Ansari, and their lawyer to leave the property and the deputy constable left the [restaurant] as well.

20. At no time prior to or during any of these events had Bagby 3015 served Bagby House with a notice of eviction, nor had Bagby 3015 filed any eviction proceeding against Bagby House or obtained a writ of possession for the [restaurant].

Finally, Bowie declared that all of Bagby 3015 and Ansari's acts "disrupted the business" of the restaurant, requiring Bagby House "to take the time and pay money to replace or make repairs to the property" and "to correct the false reports" made about Bagby House. Bowie declared that Bagby House had sustained "lost revenues and incurred repair and replacement costs totaling at least $212,950."

Bagby 3015 and Ansari replied, arguing that the Texas Citizens Participation Act does not impose an all-or-nothing approach and that the false-report aspects of the contract and quiet-enjoyment claims should be dismissed even if other aspects of these claims were not subject to dismissal under the Act. In addition, Bagby 3015

and Ansari argued that Bagby House had not made a *prima facie* case as to the false-report aspects of these claims. In particular, they maintained that Bowie's declaration was conclusory or speculative with respect to the false reports and did not show that they, as opposed to someone else, made any of the allegedly false communications about which Bagby House complains. For this reason, Bagby 3015 and Ansari argued, Bagby House had not made a *prima facie* case that Bagby 3015 and Ansari had breached the lease or the express or implied warranty or covenant of quiet enjoyment. Bagby 3015 and Ansari similarly argued that Bowie's representations about damages were too conclusory to make a *prima facie* case.

Bagby 3015 and Ansari set their motion to dismiss for submission without a hearing. The trial court did not rule on the motion, and the motion was eventually overruled by operation of law. They now appeal from the denial of their motion.

## DISCUSSION

Bagby 3015 and Ansari contend the trial court erred in denying their motion to dismiss in part. Specifically, they contend the trial court was required to dismiss Bagby House's contract and quiet-enjoyment claims to the extent they are based on allegedly false reports or complaints to government authorities. These communications fall within the scope of the Texas Citizens Participation Act, Bagby 3015 and Ansari maintain, because they constitute an exercise of their right to petition. They further maintain that Bagby House did not make a *prima facie* case in

7

support of these false-report claims. Therefore, Bagby 3015 and Ansari urge that we must reverse the trial court as to these particular claims. In addition, Bagby 3015 and Ansari request that we direct the trial court on remand to award them attorney's fees, costs, other expenses, and sanctions on the basis of their motion to dismiss.

**Standard of Review**

We review de novo a trial court's denial of a motion to dismiss under the Texas Citizens Participation Act. *Morris v. Daniel*, 615 S.W.3d 571, 575 (Tex. App.—Houston [1st Dist.] 2020, no pet.). We also interpret the Act and decide whether it applies to a legal action, or some aspect of the action, de novo. *See id.*

**Applicable Law**

In assessing whether a legal action comes within the Act's scope, we rely on the Act's language, interpreting it as a whole rather than reading its individual provisions in isolation from one another. *Id.* We interpret the Act according to the plain, common meaning of its words, unless a contrary purpose is evident from the context or a plain reading of its text leads to absurd results. *Id.* We cannot judicially amend the Act by imposing requirements the Act does not or by narrowing or expanding its scope contrary to its terms. *Id.* at 575–76. Nor can we substitute the words of the Act to give effect to what we think the Act should say. *Id.* at 576.

The Act directs us to liberally interpret its provisions to fully effectuate its purpose, which "is to encourage and safeguard the constitutional rights of persons

8

to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE §§ 27.002, 27.011(b). To accomplish this purpose, the Act provides a summary procedure in which a party may move to dismiss a legal action on the ground that the legal action is based on or is in response to the party's exercise of the right of free speech, right to petition, or right of association. *Id.* § 27.003(a).

A legal action may be subject to the Act in whole or part. *Union Pac. R.R. Co. v. Chenier*, 649 S.W.3d 440, 448 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). When a legal action is based on or in response to both activities that are subject to the Act and activities that are not, it is subject to dismissal solely to the extent that it is based on or in response to the exercise of the rights the Act safeguards. *Id.*

A motion to dismiss made under the Act generally entails a three-step analysis. *Morris*, 615 S.W.3d at 576. The movant first must demonstrate that the nonmovant's legal action is based on or is in response to the movant's exercise of the right of free speech, right to petition, or right of association. TEX. CIV. PRAC. & REM. CODE § 27.005(b)(1). The nonmovant's pleading is the best evidence of the nature of its legal action. *Morris*, 615 S.W.3d at 576. When it is clear from the nonmovant's pleading that its legal action is covered by the Act, the movant need not show more to demonstrate that the Act applies. *Id.*; *In re Est. of Calkins*, 580

S.W.3d 287, 299 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (observing that movant need not present evidence beyond pleadings to show that Act applies).

The Act defines the exercise of the rights of free speech, petition, and association. TEX. CIV. PRAC. & REM. CODE § 27.001(2)–(4). We are bound by these definitions. *Morris*, 615 S.W.3d at 576. Here, the right to petition is at issue. The Act broadly defines *exercise of the right to petition* to include, among other things, any communication that is protected by a citizen's constitutional right to petition the government. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(4); *see also Porter-Garcia v. Travis Law Firm*, 564 S.W.3d 75, 84 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (noting prior version of Act broadly defined exercise of right to petition). The Act also broadly defines *communication* as embracing virtually all imaginable forms of communication. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(1).

We have held that when a person reports an alleged wrong to governmental authorities seeking enforcement of the law this conduct constitutes an exercise of the right to petition under the Act. *E.g.*, *Bibby v. Bibby*, 634 S.W.3d 401, 408–09 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (holding that interaction with police to report perceived wrongdoing, filing of police report in this instance, constituted exercise of right to petition). This is the case whether the report is true or false. *See id.* (stating applicability of Texas Citizens Participation Act does not turn on whether party's statements in police report are true or false). Nor is our court's holding

10

limited to communications made to literal law-enforcement agents, such as peace officers. *See Holcomb v. Waller Cty.*, 546 S.W.3d 833, 839–40 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (holding citizen's letter to county complaining that its courthouse signage violated law constituted exercise of right to petition).

If the movant carries its initial burden to show that the Act applies, then the trial court must dismiss the nonmovant's legal action unless the nonmovant either establishes that its action is exempt from the Act or establishes by clear and specific evidence a *prima facie* case for each essential element of the challenged claims. TEX. CIV. PRAC. & REM. CODE §§ 27.005(c), 27.010; *Morris*, 615 S.W.3d at 577.

For purposes of the Act, a *prima facie* case requires evidence that is legally sufficient to show a claim is factually true if that evidence is not countered. *Sullo v. Kubosh*, 616 S.W.3d 869, 886 (Tex. App.—Houston [1st Dist.] 2020, no pet.). We do not consider contrary evidence in deciding whether the nonmovant has made a *prima facie* case for a challenged claim. *Choctaw Constr. Servs. v. Rail-Life R.R. Servs.*, 617 S.W.3d 143, 151 (Tex. App.—Houston [1st Dist.] 2020, no pet.). The nonmovant may rely on circumstantial evidence to prove a *prima facie* case, provided that the connection between the fact to be shown and the inference drawn from the circumstance is not too weak to be of help in deciding the issue. *Keane Frac, LP v. SP Silica Sales*, 608 S.W.3d 416, 426 (Tex. App.—Houston [1st Dist.] 2020, no pet.). But the nonmovant cannot solely rely on allegations made in its

pleadings that do no more than provide fair notice of the claim that is being made. *Schmidt v. Crawford*, 584 S.W.3d 640, 651–52 (Tex. App.—Houston [1st Dist.] 2019, no pet.). The nonmovant must provide enough detail to show the factual basis for its claim and must provide enough evidence to support a rational inference that the allegation of fact is true. *Baumgart v. Archer*, 581 S.W.3d 819, 825 (Tex. App.— Houston [1st Dist.] 2019, pet. denied). Conclusory statements are not enough. *Bibby*, 634 S.W.3d at 410. Nor are baseless opinions. *Buckingham Senior Living Cmty. v. Washington*, 605 S.W.3d 800, 808 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

Finally, if the nonmovant makes a *prima facie* case in support of the challenged claims, the burden shifts back to the movant to establish an affirmative defense or other grounds entitling the movant to judgment as a matter of law. TEX. CIV. PRAC. & REM. CODE § 27.005(d); *Morris*, 615 S.W.3d at 577. If the movant does so, then the trial court must dismiss the action. *Morris*, 615 S.W.3d at 577.

**Analysis**

I.    **Are the false-report aspects of Bagby House's claims subject to the Act?**

Under well-established law, the false-report aspects of Bagby House's contract and quiet-enjoyment claims are subject to the Texas Citizens Participation Act because they are based on or in response to Bagby 3015 and Ansari's exercise of the right to petition. Specifically, the following aspects are subject to the Act:

- making 911 calls falsely claiming the restaurant was on fire or collapsing;

- making a report to the city's fire marshal falsely claiming the restaurant was on fire or contained dangerous fire hazards;

- making reports to the city's health department falsely claiming the restaurant lacked a code-compliant grease trap or required permits; and

- summoning peace officers to the restaurant on the false pretense that Bagby House was trespassing on the premises or out of business.

*See, e.g.*, *Bibby*, 634 S.W.3d at 408–09 (holding filing of police report constituted exercise of right to petition whether report was true or false); *Holcomb*, 546 S.W.3d at 839–40 (holding letter to county complaining of its violation of law constituted exercise of right to petition); *see also Amini v. Spicewood Springs Animal Hosp.*, No. 03-18-00272-CV, 2019 WL 5793115, at *5–6 (Tex. App.—Austin Nov. 7, 2019, no pet.) (mem. op.) (holding repeated noise and zoning complaints to city constituted exercise of right to petition or right of free speech); *Comal Ag Operations v. Kelley*, No. 04-17-00692-CV, 2018 WL 842753, at *2 (Tex. App.—San Antonio Feb. 14, 2018, pet. denied) (mem. op.) (holding environmental concerns conveyed to state administrative agency in e-mails constituted exercise of right to petition).

## II. Did Bagby House make a *prima facie* case for its false-report claims?

Bagby House does not dispute that its false-report claims are subject to the Act. Instead, Bagby House contends it made a *prima facie* case in support of these claims. Bagby 3015 and Ansari contest this contention, arguing that Bagby House did not make a *prima facie* showing of the element of abandonment or show that Bagby 3015 or Ansari made the false reports, as required to recover for breach of

13

the warranty or covenant of quiet enjoyment. With respect to Bagby House's cause of action for breach of the lease, Bagby 3015 and Ansari argue that Bagby House did not make a *prima facie* showing of the elements of breach or damages.

### A. Warranty or covenant of quiet enjoyment

The elements of a claim for breach of the warranty or covenant of quiet enjoyment are the same as the elements of a constructive-eviction claim, regardless of whether the warranty or covenant is express or implied, absent contractual language to the contrary. *Holmes v. P.K. Pipe & Tubing*, 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ) (express warranty or covenant); *Willow Creek Golf Club v. Willow Creek Mgmt.*, No. 14-21-00727-CV, 2023 WL 166836, at *9 (Tex. App.—Houston [14th Dist.] Jan. 12, 2023, no pet.) (mem. op.) (implied warranty or covenant). These elements are: (1) the landlord's intention that the tenant shall no longer enjoy the premises; (2) a material act by the landlord that substantially interferes with the tenant's intended use and enjoyment of the premises; (3) an act that permanently deprives the tenant of the use and enjoyment of the premises; and (4) abandonment of the premises by the tenant within a reasonable time after the commission of the act. *1221 Eldridge Rd., Inc. v. Life Changing Ministries & Fellowship*, No. 01-14-00893-CV, 2016 WL 268689, at *8 (Tex. App.—Houston [1st Dist.] Jan. 21, 2016, pet. denied) (mem. op.). Thus, among other things, a quiet-enjoyment claim requires an eviction, whether actual or constructive

in nature. *Id.*; *Holmes*, 856 S.W.2d at 539; *cf. Goldman v. Alkek*, 850 S.W.2d 568, 571–72 (Tex. App.—Corpus Christ 1993, no writ) (holding that party did not need to show traditional elements of quiet-enjoyment claim, including abandonment, due to circumstances of case, which included express warranty of quiet enjoyment that provided not only that tenant "shall lawfully and quietly hold, occupy, and enjoy the leased premises" but also that it would do so "without hindrance or molestation").

Bagby House does not allege that it was evicted from or had abandoned the leased premises in its live pleading. Nor did Bagby House present evidence of eviction or abandonment in response to Bagby 3015 and Ansari's motion to dismiss.

On appeal, Bagby House says that it did not have to present evidence. According to Bagby House, Bagby 3015 and Ansari did not raise the issue of abandonment in the trial court. Therefore, it reasons, they have waived this issue.

We disagree. Bagby House's waiver argument stands the Texas Citizens Participation Act's shifting burden of proof on its head. Under the Act, Bagby 3015 and Ansari bore the burden to show that the Act applied to Bagby House's claims. *Morris*, 615 S.W.3d at 576. Once Bagby 3015 and Ansari had done so, the burden of proof then shifted to Bagby House to establish a *prima facie* case "for each essential element of the claim." TEX. CIV. PRAC. & REM. CODE § 27.005(c). Therefore, Bagby House was obligated to put on evidence of abandonment, whether Bagby 3015 and Ansari raised the issue or not, and Bagby House did not do so.

15

Accordingly, the trial court was obligated to dismiss Bagby House's quiet-enjoyment claim to the extent that the claim depends on false-report allegations. *See, e.g.*, *Universal Plant Servs. v. Dresser-Rand Grp.*, 571 S.W.3d 346, 358 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (explaining that nonmovant must produce *prima facie* evidence on every element of challenged claim to avoid dismissal).

## B.  Breach of the parties' lease

A commercial lease is a type of contract. *Dupree v. Boniuk Interests*, 472 S.W.3d 355, 364 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The elements of a claim for breach of a lease or contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from the breach. *Id.*

On appeal, Bagby 3015 and Ansari contend that Bagby House failed to make a *prima facie* case that they breached the lease. Bagby 3015 and Ansari reason that to show a breach based on false reports, Bagby House must produce evidence that they are the ones who made the false reports, as opposed to someone else. According to Bagby 3015 and Ansari, Bagby House's sole evidence on this issue is conclusory. They likewise maintain that Bagby House's evidence of damages is conclusory.

With respect to the issue of damages, we agree that Bagby House did not make a *prima facie* showing that it sustained damages resulting from the false reports.

16

Contract damages may include direct and consequential damages. *Signature Indus. Servs. v. Int'l Paper Co.*, 638 S.W.3d 179, 186 (Tex. 2022). The former often include damages to restore the benefit of the bargain. *Id.* The latter include foreseeable damages that were caused by the breach but were not a necessary consequence of it, which are recoverable so long as the parties contemplated that these damages would be a probable result of the breach when they made the contract. *Id.* Lost profits are one traditional measure of consequential damages. *Id.* at 191.

A nonmovant need not present direct evidence of damages to make a *prima face* case on this element of a challenged claim. *Mattress Firm v. Deitch*, 612 S.W.3d 467, 479 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). However, the evidence must be sufficient to allow a reasonable factfinder to draw a rational inference that some damages naturally flowed from the movant's conduct. *Id.* at 479–80.

In Bowie's declaration, he represented that each of the false reports "disrupted the business" of the restaurant by requiring someone "to correct the false reports," resulting in "lost revenues." But Bowie did not explain who corrected the false reports, the nature or extent of the business disruption, or how this unspecified disruption resulted in lost revenue. He did not, for example, declare that the restaurant had to remain closed during hours it otherwise would have been open for business. Nor did he declare that the restaurant had to turn away customers in consequence. Bowie did not state the amount of lost revenue attributable to the false

17

reports. All we know from his declaration is that someone had to take some time—how much is unknown—to interact with peace officers, a fire marshal, and a building inspector. These circumstances, standing alone, are not *prima facie* evidence of associated lost revenue, particularly given that Bagby House essentially asserts that in each instance the peace officers, fire marshal, and building inspector more or less took its side. Bowie's statements are too conclusory to allow a reasonable factfinder to draw a rational inference that Bagby House sustained damages as a result of the false reports. *See Bibby*, 634 S.W.3d at 410 (observing that conclusory statements cannot establish *prima facie* case under Texas Citizens Participation Act); *cf. Porter-Garcia*, 564 S.W.3d at 88 (holding nonmovant made *prima facie* showing of damages through submission of testimony, supported by documents, that provided specific figures for damages and explained how those figures were calculated); *Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 894–95 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (holding nonmovant made *prima facie* showing of damages through submission of testimony that it had spent millions of dollars developing technologies and products and that movant had diminished value of these investments through her disclosure of confidential information and trade secrets).

In sum, Bagby House did not make a *prima facie* case of damages as to its breach-of-lease claim to the extent the claim is based on false reports to governmental authorities. The trial court was obliged to dismiss this part of the

18

claim. *Universal Plant Servs.*, 571 S.W.3d at 358 (explaining that nonmovant must produce *prima facie* evidence on every element of claim to avoid dismissal).

## III. Did Bagby 3015 and Ansari fail to segregate claims subject to the Act?

Bagby House maintains that Bagby 3015 and Ansari's motion to dismiss was properly denied below because they did not propose a way to segregate the false-report aspects of its contract and quiet-enjoyment claims that are subject to the Act from the other aspects of these claims that are not subject to the Act. We disagree.

As we have noted, when a claim is based on both activities subject to the Texas Citizens Participation Act and other activities that are not, a trial court may only dismiss the claim in part; that is, the trial court may only dismiss the claim to the extent it is premised on activities safeguarded by the Act, exercise of the rights to speak, associate, and petition. *Union Pac. R.R. Co.*, 649 S.W.3d at 448. In such cases, the movant must segregate the activities the Act safeguards—here, exercise of the right to petition—from those activities the Act does not. *Id.* If the movant does not do so, the trial court does not err in denying the motion to dismiss. *Id.*

This segregation requirement has two facets. First, the movant must specify the activities it asserts are safeguarded by the Act. *See Whitelock v. Stewart*, 661 S.W.3d 583, 600–01 (Tex. App.—El Paso 2023, no pet. h.) (agreeing that trial court should deny motion to dismiss when pleadings, evidence, and arguments show a mix of activities, some subject to Act and some not, and movant does not distinguish

19

between them). Second, it must be feasible for the trial court to dispose of the aspects of the claim concerning the safeguarded activities while still allowing suit to proceed as to the activities that are not safeguarded by the Act. That is, segregation of the two types of activities must be practicable; the two types of activities—those safeguarded by the Act and those not—must not be so intertwined that dismissal of the former also disposes of the latter. *See W. Mktg. v. AEG Petrol.*, 616 S.W.3d 903, 911 (Tex. App.—Amarillo 2021, pet. denied) (stating trial court should deny motion to dismiss when cause of action arises from both activities subject to Act and activities not subject to Act that cannot be segregated from each other). Ultimately, the segregation requirement ensures that the trial court does not dismiss the nonmovant's claim in its entirety when just part of it is subject to the Act, as doing so would be inconsistent with the Act's purpose of safeguarding the movant's constitutional rights while protecting the nonmovant's right to file meritorious lawsuits for demonstrable injury. *See* TEX. CIV. PRAC. & REM. CODE § 27.002.

In their initial motion, Bagby 3015 and Ansari seemingly sought dismissal of Bagby House's contract and quiet-enjoyment claims in their entirety. However, after Bagby House objected that not all aspects of these claims were subject to the Act, Bagby 3015 and Ansari clarified in their reply that they sought dismissal of Bagby House's contract and quiet-enjoyment claims to the extent they are premised on false reports made to governmental authorities. Thus, contrary to Bagby House's position

20

on appeal, Bagby 3015 and Ansari specified the aspects of these claims that they asserted were subject to the Act and distinguished them from those that were not.

To the extent Bagby House argues this proposed segregation is not feasible, we again disagree. In general, Bagby House's contract and quiet-enjoyment claims rest on two distinct types of allegations. The first involves trespasses onto the leased premises and the theft or destruction of property. The second involves false reports made to governmental authorities. These two types of allegations arise from altogether different facts and circumstances. The underlying facts and circumstances not only are not inseparably intertwined with each other, they do not even intersect. In short, if the false-report aspects of the contract and quiet-enjoyment claims are dismissed from the suit, their dismissal will not at all affect the remainder of these claims, which are based on allegations of trespass, theft, and property destruction. On this record, the feasibility of the segregation of these claims is self-evident. *Cf. Beving v. Beadles*, 563 S.W.3d 399, 409 (Tex. App.—Fort Worth 2018, pet. denied) (holding trial court did not err in denying motion to dismiss, given that movant did not give guidance as to how to distinguish claims subject to Act from those not subject to Act and appellate court could not identify way to distinguish them).

## IV.  Are Bagby 3015 and Ansari due fees, costs, and sanctions on remand?

Bagby 3015 and Ansari request that we direct the trial court on remand to determine the amount of the reasonable attorney's fees, costs, other expenses, and

sanctions recoverable in connection with the assertion of their motion to dismiss.

A movant who obtains dismissal under the Act is entitled to "court costs and reasonable attorney's fees incurred in defending against the legal action." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1); *Morris*, 615 S.W.3d at 575. But the current version of the Act does not provide for the award of other expenses, and the decision as to whether an award of sanctions is warranted now lies entirely within the trial court's discretion under the current version. TEX. CIV. PRAC. & REM. CODE § 27.009(a)(2); *Morris*, 615 S.W.3d 575. Sanctions are no longer mandatory.

Therefore, on remand, we direct the trial court to decide the amount of court costs and reasonable attorney's fees to which Bagby 3015 and Ansari are entitled. Bagby 3015 and Ansari may also choose to seek sanctions, and we instruct the trial court to consider their motion for sanctions if they do so, but reiterate that, unlike court costs and reasonable attorney's fees, sanctions are no longer mandatory.

## CONCLUSION

We reverse the trial court's denial of Bagby 3015 and Ansari's motion to dismiss Bagby House's contract and quiet-enjoyment claims to the extent these claims are based on Bagby 3015 and Ansari's making of false reports to governmental authorities, and we render judgment dismissing these particular aspects of Bagby House's contract and quiet-enjoyment claims. We affirm the trial court's order otherwise, and we remand this cause to the trial court for further

22

proceedings consistent with our opinion, including the award of court costs, reasonable attorney's fees, and possibly sanctions to Bagby 3015 and Ansari.

Gordon Goodman
Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.