Shirley KRAMER, Appellant,

v.

Fred DOWNEY, Appellee.

No. 05–83–00178–CV.

Court of Appeals of Texas,
Dallas.

July 17, 1984.

Rehearing Denied Sept. 6, 1984.

Shirley Kramer, pro se.

John W. Henvey, Dallas, for appellee.

Before STOREY, WHITHAM and ROWE, JJ.

ROWE, Justice.

In this tort action Fred Downey obtained a money judgment and a permanent injunction against Shirley Kramer. Although the parties properly characterized this as being an invasion of privacy case, the specific thrust of Downey's complaint is the harassment he endured almost daily over a number of years from offensive activities engaged in by Kramer to force him to have a personal relationship with her when he desired none. Finding the pleadings and the evidence sufficient to support the money judgment and finding the injunctive relief to be appropriate under the circumstances, we affirm the judgment of the trial court.

 Kramer has characterized this action as being "one woman's novel solution to being swept into oblivion." According to her, after Downey interrupted a regular pattern of sexual intimacy with her, she merely "maintained visual contact with him in public places to fill the emptiness in her life." Little of what this "visual contact" entailed is disputed by Kramer; indeed, she maintains that with impunity she had a right to freely express herself by playing a "cat and mouse game" so long as she kept her distance from Downey, always stayed on public property and always skirted arrest by the police. We cannot agree that, by so doing, she shielded herself from civil liability for mental suffering caused thereby to Downey. To the contrary, the rule in Texas is that damages are recoverable for mental suffering (even if unaccompanied by physical suffering) when the wrong complained of is a willful one intended by the wrongdoer to produce mental anguish or from which such result should be reasonably anticipated as a natural consequence. *Brown v. American Transfer and Storage Co.*, 601 S.W.2d 931, 939 (Tex. 1980), cert. denied, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980); *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.1967); *Stafford v. Steward*, 295 S.W.2d 665, 667 (Tex.Civ.App.—Eastland 1956, writ dism'd by agr.). Invasion of one's right to privacy is such a wrong. *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.

1973). Although it has not previously been so held in this State, we now hold that the right to privacy is broad enough to include the right to be free of those willful intrusions into one's personal life at home and at work which occurred in this case. Further, this right to be left alone from unwanted attention may be protected, in a proper case, by injunctive relief. *Hawks v. Yancey*, 265 S.W. 233 (Tex.Civ.App.—Dallas 1924, no writ).

The evidence shows that, when after a brief extra-marital affair Downey told Kramer he did not want to see her anymore, she did not yield to his wishes but instead began a pattern of conduct to thrust herself into his presence and otherwise to disrupt his domestic and professional life. Several days a week, for several years, Kramer would be at Downey's home when he left for work or at his office when he left for lunch or for dinner and would follow him to his destination, always on a motor scooter or bicycle. She followed him as well on trips he made with his wife and children to school during the day and to restaurants in the evening. Often Kramer was observed waiting in the park across the street from the Downey residence or outside the office entrance to the hospital where Downey worked. At many of these times, she was attired in a fashion so unusual as to attract the attention of Downey's acquaintances. Downey's wife, daughter, neighbors and co-workers witnessed these activities, and some overheard Kramer on occasion make sexually vulgar remarks to Downey. In addition, by devious means, Kramer caused to be delivered to Downey numerous unwanted letters, cards and gifts. Downey testified that Kramer's incessant behavior increasingly caused him to be upset, agitated, depressed and fearful for the safety of himself and his family. He became unable to sleep at night and unable to concentrate at work; finally, he sought psychological counseling.

 The jury by its verdict found that Kramer: (1) followed, spied upon and harassed Downey; and (2) tried to force Downey to have a personal relationship with

her when he desired none. These actions by Kramer were found to be: (1) a proximate cause of damage to Downey; and (2) an intrusion upon his seclusion or solitude or into his private affairs. Actual damages were found to be in the amount of $1,000.00. Exemplary damages were assessed at $25,000.00 of which $13,500.00 were remitted. The jury also found that an award of money damages alone was not reasonably likely to deter Kramer from her course of conduct, this being tantamount in our opinion to a finding of malice. Although the incomplete statement of facts appearing in this record authorizes a presumption that all jury findings have adequate support in the evidence, a resort to this presumption is unnecessary because the above jury findings are sufficient to support the judgment and have adequate support in that partial statement of facts which is before us. Accordingly, without merit are Kramer's no evidence and factually insufficient evidence points, the point concerning absence of a malice finding, and those two points concerning requested but refused special issues on collateral and noncontrolling matters. Kramer's first eleven points of error are overruled.

■ By her twelfth and thirteenth points of error, Kramer complains about the trial court's failure to give any controlling weight to Downey's promiscuity, certain proffered evidence thereon having been excluded and injunctive relief notwithstanding having been granted to him. On these grounds we find no reversible error. We are cited no cases (and have found none through our own research) granting this claimed defense to a perpetrator of a willful tort of the type involved here. Without intending to sanction extra-marital affairs, we decline to hold that Kramer was justified in treating Downey the way she did because Downey's own sexual immorality made him unworthy of judicial relief. Kramer's twelfth and thirteenth points of error are overruled.

■ Kramer's remaining four points of error address certain provisions of the injunction pertaining to restraints on her conduct. She complains that the language used to control her conduct is so broad that not only does the injunction decree fail to give her fair notice of what is being restricted, but also it impinges unduly on the exercise of her constitutional rights. At the outset we agree that, while injunctive relief designed to prevent the abuse of personal harassment will encounter these two evils, it must, nonetheless, avoid them. Whether the evils are in fact reasonably avoided requires a judgment call. To that end, we have reviewed the decree of injunction before us and find it satisfactory. The format adopted by the trial judge is similar to that devised and used regularly in domestic relations cases to minimize friction between estranged couples. The restraints reach only so far as will prevent activities motivated by certain purposes that are condemned. While this device may not be perfect, it has proven to be useful without being unacceptably harsh. Should any unique inequity arise from its application in this action, an appropriate redress can be fashioned by the trial judge when enforcement of the injunction is placed at issue.

Affirmed.

STOREY, Justice, dissenting.

I respectfully dissent. This case presents classic proof of the old aphorism: "hard facts make bad law." I cannot condone the reprehensible conduct of this appellant—all freely admitted by her. Rather, my point of departure from the majority is its failure to exercise judicial restraint. The majority holding extends the holding of the supreme court in *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973), so far as to virtually create a new tort in Texas. This should be left to the court of last resort. *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 791 (Tex.1967); *Maus v. National Living Centers, Inc.*, 633 S.W.2d 674, 676 (Tex.App.—Austin 1982, writ ref'd n.r.e.).

I would reverse and remand with instructions to dismiss.