

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00366-CV

_____

CARL JOHNSON AND PATRICIA JOHNSON, Appellants

V.

BEARFOOT COMPANIES, LLC, AND BEARFOOT AQUATIC MANAGEMENT
LLC, Appellees

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 23-8778-431

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

This appeal arises from a civil lawsuit that Appellants Carl and Patricia Johnson filed against their homeowners' association (the HOA) and Appellees Bearfoot Companies, LLC and Bearfoot Aquatic Management, LLC (collectively, Bearfoot), a pool-management company that the HOA had engaged to manage a community pool. The Johnsons appeal from the trial court's orders granting Bearfoot's Rule 91a motion to dismiss and severing the Johnsons' dismissed claims against Bearfoot from the remainder of the lawsuit. We affirm.

## I. BACKGROUND

The Johnsons reside within the Windsong Ranch development in Prosper, Texas. Windsong Ranch residents are granted access to certain common areas, including the Crystal Lagoon, a roughly five-acre pool complex containing, among other things, three sandy beaches, a playground, grilling areas, and outdoor showers.

In September 2022, the Johnsons sued the HOA and Bearfoot. The Johnsons alleged that in retaliation for their having filed—and ultimately settled—a prior lawsuit against Bearfoot, the HOA and Bearfoot had targeted them by selectively enforcing certain rules, creating false reports, and imposing "fraudulent fines."[1] Based on these allegations, the Johnsons asserted myriad causes of action against the HOA and

---

[1]The Johnsons initiated the underlying lawsuit after the HOA assessed a $100 civil fine against them for violating a pool rule.

Bearfoot, including negligence; intrusion on seclusion; and breaches of fiduciary duty, the covenant of quiet enjoyment, and covenant (generally).[2]

After Bearfoot filed a Rule 91a motion to dismiss, the Johnsons filed a response as well as three supplements to their Second Amended Petition (their live pleading). Following a hearing, the trial court granted the Rule 91a motion and dismissed all of the Johnsons' claims against Bearfoot. The trial court awarded Bearfoot actual attorney's fees and conditional attorney's fees in the event that the Johnsons unsuccessfully appealed.

Bearfoot then filed a motion to sever the Johnsons' dismissed causes of action against Bearfoot from the remaining claims and counterclaims between the Johnsons and the HOA. The trial court granted the motion and severed the Johnsons' dismissed claims against Bearfoot into a separate cause of action.

This appeal followed.

---

[2]The Johnsons also asserted causes of action for declaratory relief, breach of the duty of fair dealing, harassment, and injunctive relief. Although these causes of action were the subject of Bearfoot's Rule 91a motion to dismiss, the Johnsons do not mention them in their briefing before this court. Thus, we presume that they did not wish to challenge the trial court's dismissal of these causes of action. In any event, the Johnsons have forfeited any complaint concerning the dismissal of these claims due to inadequate briefing. *See* Tex. R. App. P. 38.1; *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing); *Jackson v. Vaughn*, 546 S.W.3d 913, 922 (Tex. App.—Amarillo 2018, no pet.) (holding that appellant had waived issue due to inadequate briefing).

## II. DISCUSSION

In three issues, the Johnsons argue that the trial court erred by (1) dismissing their claims against Bearfoot under Rule 91a, (2) awarding Bearfoot conditional appellate attorney's fees based on insufficient evidence, and (3) severing the Johnsons' dismissed claims against Bearfoot into a separate cause of action. For the reasons set forth below, all of these arguments are meritless.

### A. Rule 91a Dismissal

In their first issue, the Johnsons contend that the trial court erred by dismissing all of their claims against Bearfoot under Rule 91a. We disagree.

#### 1. Applicable Law and Standard of Review

Rule 91a allows a party to move to dismiss a claim brought against it if the claim has "no basis in law or fact." Tex. R. Civ. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.*

We review the merits of a Rule 91a ruling de novo. *In re Farmers Tex. Cnty. Mut. Ins.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding). In our review, we incorporate the fair-notice pleading standard to determine if the petition's allegations are sufficient to allege a legal and factual basis for each cause of action. *Wooley v. Schaffer*, 447 S.W.3d 71, 75–76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see* Tex. R. Civ. P. 45(b), 47(a); *In re Odebrecht Constr., Inc.*, 548 S.W.3d 739, 746 (Tex.

4

App.—Corpus Christi–Edinburg 2018, orig. proceeding) (op. on reh'g). This means that we construe the pleadings liberally in the plaintiffs' favor, accepting as true their factual allegations, to determine whether they sufficiently alleged a legal and factual basis for each cause of action, thereby giving the defendant fair notice of the nature of the controversy, its basic issues, and the type of evidence that could be relevant. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224–25 (Tex. 2017); *Darnell v. Rogers*, 588 S.W.3d 295, 301 (Tex. App.—El Paso 2019, no pet.) (quoting *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007)); *Thomas v. 462 Thomas Fam. Props., LP*, 559 S.W.3d 634, 639–40 (Tex. App.—Dallas 2018, pet. denied); *Wooley*, 447 S.W.3d at 75–76. Although we accept the plaintiffs' factual allegations as true, we need not accept their legal conclusions as correct. *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *8 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (mem. op.) (citing *City of Austin v. Liberty Mut. Ins. Co.*, 431 S.W.3d 817, 826 (Tex. App.—Austin 2014, no pet.)).

### 2. Procedural Arguments

Within their first issue, the Johnsons raise both substantive and procedural arguments. Procedurally, the Johnsons assert that Bearfoot's Rule 91a motion to dismiss should have been denied because Bearfoot (1) did not file special exceptions, (2) did not amend its motion to address the three supplements that the Johnsons filed to their second amended petition, and (3) did not sufficiently or specifically identify

5

the defects in the Johnsons' petition. The Johnsons' procedural arguments are meritless.

First, Bearfoot was not required to file special exceptions before filing its Rule 91a motion to dismiss. *See, e.g., Holland v. Davis*, No. 05-15-01173-CV, 2016 WL 3547982, at *1 (Tex. App.—Dallas June 28, 2016, pet. denied) (mem. op.) ("Although [appellant] argues that [appellee's] [R]ule 91a motion to dismiss must fail because she did not specially except to his petition, he does not cite any authority requiring a defendant to file special exceptions before seeking a [R]ule 91a dismissal. We also have not found any."). The Johnsons repeatedly assert that Bearfoot waived any complaints concerning the deficiencies in the Johnsons' petition by failing to file special exceptions before proceeding with its Rule 91a motion, but the only case that they cite for this proposition, *Murray v. Alvarado*, 438 S.W.3d 880, 885 (Tex. App.—El Paso 2014, pet. denied), did not involve a Rule 91a dismissal and is therefore inapposite, *see id.* (holding that appellant had waived complaints regarding pleading defects by failing to file special exceptions before the trial court had charged or instructed the jury (citing Tex. R. Civ. P. 90)). Because Bearfoot was not required to file special exceptions before pursuing a Rule 91a dismissal, no waiver occurred. *See Ruth v. Crow*, No. 03-16-00326-CV, 2018 WL 2031902, at *3 (Tex. App.—Austin May 2, 2018, pet. denied) (mem. op. on reh'g); *Holland*, 2016 WL 3547982, at *1.

Second, Bearfoot was not required to amend its Rule 91a motion to address the three petition supplements filed by the Johnsons. Rule 91a provides that if a

respondent amends a challenged cause of action at least three days before the hearing on a motion to dismiss, the movant "*may*, before the date of the hearing, file a withdrawal of the motion or an amended motion directed to the amended cause of action." Tex. R. Civ. P. 91a.5(b) (emphasis added). Thus, while Bearfoot had the option to amend its motion to address the Johnsons' supplements, it was not required to do so. *See U.S. v. Rodgers*, 461 U.S. 677, 706, 103 S. Ct. 2132, 2149 (1983) ("The word 'may[]' . . . usually implies some degree of discretion."); *Roth v. Dist. of Columbia Cts.*, 160 F. Supp. 2d 104, 109 (D.D.C. 2001) ("May is most commonly used to indicate that an action is permissive, or in the discretion of the actor."). Because Bearfoot elected not to amend or withdraw its motion, the trial court properly considered and ruled on Bearfoot's Rule 91a motion as originally filed. *See* Tex. R. Civ. P. 91a.5(c).

Finally, Bearfoot's Rule 91a motion described the defects in the Johnsons' causes of action with sufficient specificity. *See* Tex. R. Civ. P. 91a.2. The Johnsons assert that Bearfoot's motion was akin to a general demurrer and contained only general and nonspecific allegations, but this assertion is belied by our review of the motion itself. Bearfoot enumerated all of the causes of action that it sought to dismiss and stated specific reasons why each had no basis in law.[3] This was sufficient to

---

[3]For example, Bearfoot specifically alleged that the Johnsons' negligence claim had no basis in law because (1) the Johnsons had "fail[ed] to identify the party to which this [claim was] directed," (2) they had failed to "plead the elements of negligence[] or any facts in support," (3) they had failed to "state that Bearfoot owed

7

satisfy Rule 91a.2's requirements. *See Resurgence Partners, LLC v. Urbach*, No. 02-21-00418-CV, 2023 WL 2033945, at *5 (Tex. App.—Fort Worth Feb. 16, 2023, no pet.) (mem. op.).

Because Bearfoot was not required to file special exceptions or to amend its Rule 91a motion to address the Johnsons' petition supplements and because Bearfoot's motion was sufficiently specific, we overrule the Johnsons' procedural complaints and turn to the merits of Bearfoot's motion.

### 3. Negligence

Under Texas law, "[t]he elements of a common-law negligence claim are (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Elephant Ins. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). Because the Johnsons failed to establish the existence of a legal duty owed to them by Bearfoot, the trial court properly dismissed their negligence claim.

The existence of a legal duty is a threshold inquiry in any negligence case. *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014). Whether a duty is owed is a question of law for the court to decide. *Pagayon*, 536 S.W.3d at 503; *Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005); *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). A legal

---

some legal duty to prevent a harm that [the Johnsons] allegedly suffered," and (4) the Johnsons' petition did not clearly state what injury, if any, they had suffered "besides their disagreement with receiving a fine . . . *not imposed* by Bearfoot."

duty can arise either by statute or by common law. O'Connor's Texas Causes of Action ch. 21-A, § 2 (2022); *see Westerman v. Mims*, 227 S.W. 178, 184 (Tex. 1921). "When a duty has not been recognized in particular circumstances, the question is whether one should be." *Pagayon*, 536 S.W.3d at 503. In such situations, a duty's existence turns "on a legal analysis balancing a number of factors, including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010) (quoting *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217, 218 (Tex. 2008)); *see Pagayon*, 536 S.W.3d at 503–04.

The Johnsons put forth two arguments for the existence of a legal duty. First, they argue that Bearfoot owed them a duty under a "participatory liability" theory. In support of this theory, they assert that Bearfoot is subject to the same duties as the HOA because Bearfoot and the HOA "coordinated and worked together." Alternatively, the Johnsons contend that Bearfoot independently owed them a duty of care based on its status as manager of the pool. Neither of these arguments has merit.

The Johnsons alleged four distinct theories of participatory liability against Bearfoot: (1) conspiracy, (2) assisting or encouraging, (3) assisting and participating, and (4) acting in concert.[4] However, conspiracy and acting in concert—both of which

---

[4]The last three of these theories fall under the aiding-and-abetting umbrella, and Texas law regarding the availability of these theories is unsettled. *See Juhl v. Airington*, 936 S.W.2d 640, 643–44 (Tex. 1996); *Fiamma Statler, LP*, 2020 WL 6334470, at *10; *Hampton v. Equity Tr. Co.*, 607 S.W.3d 1, 4–5 (Tex. App.—Austin 2020, pet.

require a showing of specific intent—do not apply to negligence claims, *see Juhl*, 936 S.W.2d at 644; *Triplex Comms., Inc. v. Riley*, 900 S.W.2d 716, 720 n.2 (Tex. 1995), and the Johnsons did not plead sufficient facts to support their remaining participatory-liability theories. In the second supplement to their Second Amended Petition, the Johnsons merely stated in conclusory fashion "that [Bearfoot and the HOA] assisted or encouraged, assisted and participated, acted in concert, and conspired among themselves . . . to cause the harm alleged by [the Johnsons]." They did not allege any specific facts in support of the theories' required elements; instead, they vaguely alleged that the HOA and Bearfoot "coordinated and worked together" to breach unspecified "duties" and "covenants." Such vague and conclusory allegations are not sufficient to satisfy the fair-notice and Rule 91a standards. *See, e.g.*, *Teel v. Autonation Motors, LLC*, No. 02-20-00419-CV, 2022 WL 123217, at *4 (Tex. App.—Fort Worth Jan. 13, 2022, no pet.) (mem. op.) (quoting *Fiamma Statler, LP*, 2020 WL 6334470, at *12). Thus, the trial court did not err by concluding that the Johnsons had failed to properly plead the existence of a legal duty based on a participatory-liability theory.

---

denied); *see also* O'Connor's Texas Causes of Action ch. 36 (2022). Because the parties did not meaningfully brief the question of whether these theories are available in Texas, we will assume, without deciding, that they are. *See First United Pentecostal Church of Beaumont*, 514 S.W.3d at 224 (assuming, without deciding, that Texas recognizes a cause of action for aiding and abetting because the parties had not raised or briefed the question).

The Johnsons also failed to allege sufficient facts to show that Bearfoot independently owed them a duty of care. Although the Johnsons generally—and repeatedly—alleged that Bearfoot owed them a duty of care, they failed to state any specific facts supporting the duty's existence or to identify a specific statute or common-law principle giving rise to the alleged duty.[5] *See Indep. E. Torpedo Co. v. Carter*, 131 S.W.2d 125, 126 (Tex. App.—Eastland 1939, no writ) ("A mere general allegation of the existence of [a] duty without a statement of facts from which the duty arises is insufficient as being merely a statement of a legal conclusion." (quoting 45 C.J. 1061, § 631)); *see also Teel*, 2022 WL 123217, at *4 ("Unadorned recitals of the elements of a cause of action, supported by mere conclusory statements, fail to sufficiently allege a cause of action under the fair-notice and Rule 91a standards." (quoting *Fiamma Statler, LP*, 2020 WL 6334470, at *12)). Indeed, when pressed by the trial court during the hearing to identify a specific duty that Bearfoot had breached, all

---

[5]Without citing any authority, the Johnsons claimed that they were third-party beneficiaries of Bearfoot's contract with the HOA and asserted that Bearfoot owed them various duties by virtue of this contractual relationship. However, "[a] cause of action for negligence cannot be based on an allegation that a party failed to perform duties subsumed in a contract because such an action sounds in contract and not tort." *Shioleno Indus. v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, No. 2-06-016-CV, 2007 WL 805563, at *5 (Tex. App.—Fort Worth Mar. 15, 2007, pet. denied) (mem. op.) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991)). Thus, "[i]n order for a tort duty to arise out of a contractual duty, . . . the liability must arise 'independent of the fact that a contract exists between the parties': the defendant must breach a duty imposed by law rather than by the contract." *United Serv. Auto. Ass'n v. Pennington*, 810 S.W.2d 777, 783 (Tex. App.—San Antonio 1991, writ denied) (quoting *Sw. Bell Tel. Co.*, 809 S.W.2d at 494). Therefore, the Johnsons' negligence claim cannot be based upon Bearfoot's breach of a duty imposed by its contract with the HOA.

11

that the Johnsons' counsel could muster was that Bearfoot had a "duty to enforce the [pool] rules" and had breached this duty by enforcing the rules "arbitrarily and capriciously." But even if Bearfoot had a *moral* duty to enforce the pool rules in a fair and nonarbitrary manner, we are not persuaded that it had a *legal* duty to do so, and the Johnsons have not cited any authority suggesting otherwise. *See Westerman*, 227 S.W. at 184 ("There are many moral duties that are not legal duties. There []are many legal duties—made so by the common law and particularly by the statute law— that are not moral duties.").

Because the Johnsons failed to allege sufficient facts to support the existence of a legal duty owed to them by Bearfoot, we conclude that their negligence claim as pleaded has no basis in law. *See* Tex. R. Civ. P. 91a.1. Thus, the trial court did not err by granting Bearfoot's Rule 91a motion as to this claim. *See Fiamma Statler, LP*, 2020 WL 6334470, at *10 (citing *DeVoll v. Demonbreun*, No. 04-14-00116-CV, 2014 WL 7440314, at *3 (Tex. App.—San Antonio Dec. 31, 2014, no pet.)).

### 4. Intrusion on Seclusion

To recover for intrusion on seclusion, a plaintiff must show (1) that the defendant intentionally intruded, physically or otherwise, upon the plaintiff's solitude, seclusion, or private affairs; (2) that the intrusion would be highly offensive to a reasonable person; and (3) that the plaintiff suffered injury as a result. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993); *Rogers v. City of Houston*, 627 S.W.3d 777, 792 (Tex. App.—Houston [14th Dist.] 2021, no pet.). This cause of action seeks

12

recovery for a defendant's improper intrusion into an area where the plaintiff has manifested an expectation of privacy. *Rogers*, 627 S.W.3d at 792 (citing *Fawcett v. Grosu*, 498 S.W.3d 650, 664 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)). Intrusion can occur either by physical invasion of the plaintiff's property or by nonphysical invasion such as spying or eavesdropping upon private conversations with the aid of wiretaps. *Id.* (citing *Moore v. Bushman*, 559 S.W.3d 645, 649 (Tex. App.—Houston [14th Dist.] 2018, no pet.)). "When evaluating the 'highly offensive' element of an intrusion on seclusion claim, courts have required that the intrusion be unreasonable, unjustified, or unwarranted." *Moricz v. Long*, No. 06-17-00011-CV, 2017 WL 3081512, at *5 (Tex. App.—Texarkana July 20, 2017, no pet.) (mem. op.) (first citing *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973); and then citing *Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex. App.—Tyler 2006, no pet.)).

Because the Johnsons' petition fails to allege facts establishing the required act of intrusion, the trial court properly dismissed their intrusion-on-seclusion claim. The Johnsons' claim is based entirely on alleged actions that occurred while they were at the community pool. But the Johnsons had no reasonable expectation of privacy in this communal area. *See Evans v. State*, 995 S.W.2d 284, 286 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (holding that appellant had no reasonable expectation of privacy in the fenced-in common areas of her apartment complex); *see also Vaughn*, 202 S.W.3d at 320 ("One cannot expect to be entitled to seclusion when standing directly in front of a large window with the blinds open or while outside."). Because

the Johnsons failed to allege that Bearfoot intruded into an area where they had an expectation of privacy or to identify a protectable privacy interest that Bearfoot had violated, their intrusion-on-seclusion claim lacks a legal basis. *See Vaughn*, 202 S.W.3d at 320 (holding that evidence showing that defendant had watched plaintiffs while they were outside and had used binoculars to look at them through "a large window with the blinds open" did not support a finding that the defendant had intruded on the plaintiffs' seclusion); *see also Moricz*, 2017 WL 3081512, at *5 (holding that plaintiff's allegation that a process server hired by defendant had left demand letters on her doorstep was insufficient to establish intrusion upon seclusion because the process server "did not enter the home[] and there [was] no evidence that [plaintiff's] doorstep was located in a private area, secluded, fenced, or otherwise unavailable to receive deliveries, visitors, or notifications"); *Carr v. H.E. Butt Grocery Co.*, No. 03-07-00149-CV, 2009 WL 3230834, at *5 (Tex. App.—Austin Oct. 7, 2009, no pet.) (mem. op.) (holding that trial court did not abuse its discretion by dismissing inmate's intrusion-upon-seclusion claim as frivolous pursuant to Chapter 14 of the Texas Civil Practice and Remedies Code because his petition failed to allege facts showing that he had an expectation of privacy at the time of the alleged incident or to identify a protectable privacy interest).

Citing a case from the Dallas Court of Appeals, the Johnsons contend that their intrusion-on-seclusion claim is viable even though it is based on actions that occurred exclusively in a public place. *See Kramer v. Downey*, 680 S.W.2d 524, 525 (Tex.

14

App.—Dallas 1984, writ ref'd n.r.e.). However, *Kramer* is distinguishable from the present case. *Kramer* involved a situation in which the defendant had been stalking the plaintiff at his home and place of work and on trips with his family. *Id.* Rejecting the defendant's argument that she could engage the plaintiff in a "cat and mouse game" with impunity as long as she kept her distance from him and always stayed on public property, the Dallas Court of Appeals held "that the right to privacy is broad enough to include the right to be free of . . . willful intrusions into one's personal life at home and at work . . . ." *Id.* Unlike the plaintiff in *Kramer*, the Johnsons do not allege that Bearfoot stalked them or otherwise invaded their personal lives at home or at work. Rather, as noted above, their intrusion-on-seclusion claim is based entirely on conduct that occurred while they were at the community pool—a place where they had no expectation of privacy. *See Evans*, 995 S.W.2d at 286; *see also Vaughn*, 202 S.W.3d at 320. Thus, the Johnsons' reliance on *Kramer* is misplaced.

Relying on another case from the Dallas Court of Appeals, the Johnsons argue that their allegation that Bearfoot sent "false reports" to the HOA is sufficient to support the first element of their intrusion-on-seclusion claim. *See Floyd v. Park Cities People, Inc.*, 685 S.W.2d 96, 97 (Tex. App.—Dallas 1985, no writ) (noting that a plaintiff may "sustain an action for invasion of privacy" by, inter alia, showing "that false statements of facts were publicized about him"). This argument fails for two reasons. First—and most significantly—after *Floyd* was decided, the Texas Supreme Court expressly declined to recognize false-light invasion-of-privacy claims based on

15

the publication of false statements about the plaintiff. *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994); *see Carr*, 2009 WL 3230834, at *5 (enumerating the four types of invasion-of-privacy claims and noting that the Texas Supreme Court "expressly declined to recognize" the third type, which is based on "publicity that unreasonably places another in a false light before the public" (citing *Cain*, 878 S.W.2d at 578)). Second, even if false-light invasion-of-privacy claims were recognized under Texas law, the Johnsons' claim would still fail because forwarding internal reports—as the Johnsons alleged Bearfoot did—does not constitute publication for false-light purposes. *See Indus. Found. of the S. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 683–84 (Tex. 1976).

Because the Johnsons failed to allege sufficient facts to support the first element of their intrusion-on-seclusion claim, we conclude that it has no basis in law. *See* Tex. R. Civ. P. 91a.1. Thus, the trial court did not err by granting Bearfoot's Rule 91a motion as to this claim. *See Fiamma Statler, LP*, 2020 WL 6334470, at *10 (citing *DeVoll*, 2014 WL 7440314, at *3).

### 5. Breach of Fiduciary Duty

To prevail on a breach-of-fiduciary-duty claim, a plaintiff must prove that (1) there is a fiduciary relationship between the plaintiff and defendant, (2) the defendant breached his fiduciary duty to the plaintiff, and (3) the breach resulted in an injury to the plaintiff or benefit to the defendant. *Lindley v. McKnight*, 349 S.W.3d 113,

16

124 (Tex. App.—Fort Worth 2011, no pet.) (quoting *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)).

There are two categories of fiduciary relationships: formal and informal. *See Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005). In formal relationships—such as those between partners, principals and agents, and attorneys and clients—fiduciary duties are owed as a matter of law. *Cardwell v. Gurley*, No. 05-09-01068-CV, 2018 WL 3454800, at *4 (Tex. App.—Dallas July 18, 2018, pet. denied) (mem. op.) (first citing *Meyer*, 167 S.W.3d at 330; and then citing *McAfee, Inc. v. Agilysis, Inc.*, 316 S.W.3d 820, 829 (Tex. App.—Dallas 2010, no pet.)). A fiduciary duty may also arise from an informal "moral, social, domestic, or purely personal relationship of trust and confidence, generally called a confidential relationship." *Lindley*, 349 S.W.3d at 124–25. Although the question of an informal fiduciary duty's existence is ordinarily one of fact, when the facts are undisputed or when the issue is one of no evidence, it becomes a question of law. *See Meyer*, 167 S.W.3d at 330; *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute on other grounds as stated in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002) (op. on reh'g). Because imposing a fiduciary duty requires the fiduciary party to place someone else's interests above its own, Texas courts are reluctant to recognize fiduciary relationships. *Lindley*, 349 S.W.3d at 124 (first citing *Crim Truck & Tractor Co.*, 823 S.W.2d at 594; and then citing *Jones v.*

*Thompson*, No. 08-08-00245-CV, 2010 WL 3157145, at *8 (Tex. App.—El Paso Aug. 11, 2010, pet. denied)).

In their petition, the Johnsons asserted in conclusory fashion that the HOA and Bearfoot "owe[d] duties to [the Johnsons], including . . . fiduciary . . . duties," but they failed to allege sufficient facts to support the existence of a fiduciary duty. The Johnsons, citing no authority, suggest that an informal fiduciary relationship existed between themselves and Bearfoot because they pay dues to the HOA and the HOA hired and delegated some of its duties to Bearfoot. However, these alleged facts do not—even arguably—show the existence of a confidential relationship that could give rise to an informal fiduciary duty. *See id.* at 125 (explaining that "[a] confidential relationship exists where influence has been acquired and abused and confidence has been extended and betrayed" and admonishing that "[a] person is justified in placing confidence in the belief that another party will act in his best interest only where he is accustomed to being guided by the judgment or advice of the other party and there exists a long association in a business relationship as well as personal friendship"). Given that, in the absence of unique facts not present here, a homeowners' association generally owes no fiduciary duty to individual property owners, we fail to see—and the Johnsons do not explain—how the HOA's delegation of certain duties to Bearfoot could have established a fiduciary relationship between Bearfoot and the

18

Johnsons.[6] *See Harris v. Spires Council of Co-Owners*, 981 S.W.2d 892, 898 (Tex. App.—Houston [1st Dist.] 1998, no pet.); *see also Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 735 (S.D. Tex. 2010) (order); *cf. Severs v. Mira Vista Homeowners Ass'n, Inc.*, 559 S.W.3d 684, 704 (Tex. App.—Fort Worth 2018, pet. denied) (concluding that no fiduciary relationship existed between homeowners' association and property owners because the record contained "no evidence that a formal or informal fiduciary relationship of trust and confidence exist[ed] between the two parties prior to, and apart from, the contractual relationship" and because neither the neighborhood's declaration of covenants, conditions, and restrictions nor its design guidelines "reveal[ed] an agreement to enter into a fiduciary relationship").

Because the Johnsons failed to allege sufficient facts supporting their conclusory assertion that Bearfoot owed them a fiduciary duty, we conclude that their breach-of-fiduciary-duty claim had no basis in law. *See* Tex. R. Civ. P. 91a.1. Thus, the trial court did not err by granting Bearfoot's Rule 91a motion as to this claim. *See Fiamma Statler, LP*, 2020 WL 6334470, at *10 (citing *DeVoll*, 2014 WL 7440314, at *3).

### 6. Breach of the Covenant of Quiet Enjoyment

---

[6]Because the Johnsons' petition is devoid of any factual allegations supporting their contention that the HOA owed them a fiduciary duty, we reject their argument that Bearfoot is participatorily liable for the HOA's breach. In any event, as pointed out above, the Johnsons did not plead sufficient facts to support their participatory-liability theories. *See supra* Section II.A.3.

The elements of a breach-of-the-warranty-of-quiet-enjoyment claim are the same as those for a constructive-eviction claim. *Lazell v. Stone*, 123 S.W.3d 6, 12 n.1 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (citing *Goldman v. Alkek*, 850 S.W.2d 568, 571–72 (Tex. App.—Corpus Christi–Edinburg, 1993 no writ)). These elements are (1) a valid landlord–tenant relationship existed between the parties, (2) the landlord intended that the tenant no longer use or enjoy the leased property, (3) the landlord's material act or omission substantially interfered with the tenant's use and enjoyment of the property, (4) the act permanently deprived the tenant of the use and enjoyment of the premises, and (5) the tenant abandoned the premises within a reasonable time after the landlord's interference. *Kemp v. Brenham*, No. 05-18-01377-CV, 2020 WL 205313, at *1–2 (Tex. App.—Dallas Jan. 14, 2020, pet. denied) (mem. op.); *Holmes v. P.K. Pipe & Tubing, Inc.*, 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ).

The Johnsons failed to allege specific facts supporting the existence of a landlord–tenant relationship.[7] In their petition, the Johnsons alleged that "[the HOA]

---

[7]We note that it is unclear whether a residential tenant can assert a breach-of-the-covenant-of-quiet-enjoyment claim following the passage of Property Code Section 92.061—which eliminated many of the common-law warranties that applied to residential leases and replaced them with statutory warranties—because the statute does not specifically address the implied covenant of quiet use and enjoyment. *See* Tex. Prop. Code Ann. § 92.061; *see also* O'Connor's Texas Causes of Action ch. 16-H, § 6.2 (2022). Considering that the parties did not raise or brief this issue, we will assume, without deciding, that a residential tenant can assert such a claim. *See First United Pentecostal Church of Beaumont*, 514 S.W.3d at 224.

20

operates in the position of a landlord for the homeowner association premises" and that the HOA and Bearfoot "operate together as landlord for the pool," but as previously discussed, such conclusory allegations are insufficient to satisfy the fair-notice and Rule 91a standards. *See Teel*, 2022 WL 123217, at *4. In their appellate brief, the Johnsons assert that a "de facto landlord–tenant relationship exists between the parties" and that "a right of quiet enjoyment arises from the restrictive covenant of the community," but they cite no authority to support either of these theories. *See* Tex. R. App. P. 38.1(i). Indeed, the Johnsons undermined their argument that the HOA and Bearfoot operate as the pool's de facto landlords by orally acknowledging to the trial court that the Johnsons and the other Windsong Ranch residents—not the HOA or Bearfoot—own the pool and the other common areas. *Cf.* Tex. Prop. Code Ann. § 92.001(2) ("'Landlord' means the owner . . . of a dwelling . . . .").

Because the Johnsons did not allege any specific facts supporting the existence of a valid landlord–tenant relationship between themselves and Bearfoot, the trial court did not err by dismissing the Johnsons' claim for breach of the covenant of quiet enjoyment. *See* Tex. R. Civ. P. 91a.1; *Fiamma Statler, LP*, 2020 WL 6334470, at *10 (citing *DeVoll*, 2014 WL 7440314, at *3).

### 7. Breach of Covenant

In addition to their claim for breach of the covenant of quiet enjoyment, the Johnsons also asserted a general claim for "breach of covenant." But in their petition, they failed (1) to allege what covenant was breached, (2) to identify the contract or

21

agreement establishing the purportedly breached covenant, or (3) to name the parties to this unidentified contract or agreement. Indeed, the Johnsons failed even to identify the party that had allegedly committed the breach and instead asserted a vague claim for breach of covenant against both the HOA and Bearfoot indiscriminately. At the hearing on Bearfoot's Rule 91a motion to dismiss, the trial court accepted as true the Johnsons' contention that Bearfoot and the HOA should be treated as one and the same for purposes of the Johnsons' breach-of-covenant claim, but even then, the Johnsons were unable to identify any specific covenant (other than the previously addressed covenant of quiet enjoyment) that Bearfoot had breached. The Johnsons' vague and conclusory assertion that Bearfoot's and the HOA's conduct violated certain unidentified restrictive covenants is insufficient to satisfy the fair-notice and Rule 91a standards. *See Teel*, 2022 WL 123217, at \*4. Thus, the trial court did not err by dismissing the Johnsons' breach-of-covenant claim. *See* Tex. R. Civ. P. 91a.1; *Fiamma Statler, LP*, 2020 WL 6334470, at \*10 (citing *DeVoll*, 2014 WL 7440314, at \*3).

### 8. Disposition of First Issue

Having determined that the trial court properly dismissed all of the Johnsons' claims against Bearfoot under Rule 91a, we overrule the Johnsons' first issue.

## B. Attorney's Fees

In their second issue, the Johnsons contend that the trial court erred by awarding Bearfoot $20,000 in appellate attorney's fees. Specifically, they assert that (1) the trial court lacked authority under Rule 91a to award appellate attorney's fees

22

and (2) that the evidence is insufficient to support the amount of the awarded fees. We disagree.

Rule 91a provides that a trial court "may award the prevailing party . . . all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court." Tex. R. Civ. P. 91a.7. Citing no authority (other than the rule itself), the Johnsons contend that because Rule 91a mentions only fees incurred "in the trial court," it provides no basis for the trial court's award of appellate attorney's fees. *See id.* However, the Johnsons' interpretation of Rule 91a.7 conflicts with existing case law. *See Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 187–88 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (concluding that a prevailing party on a Rule 91a motion may recover appellate attorney's fees because the phrase "in the trial court" in Rule 91a.7 follows the phrase "with respect to the challenged cause of action," not the word "incurred"); *see also Fiamma Statler, LP*, 2020 WL 6334470, at *19 (recognizing that prevailing party was entitled to appellate attorney's fees under Rule 91a but remanding the issue of reasonable and necessary appellate attorney's fees to the trial court for redetermination). Because the Johnsons have cited no contrary authority, we reject their argument that the trial court was not authorized to award Bearfoot appellate attorney's fees under Rule 91a.

The Johnsons' contention that Bearfoot failed to present sufficient evidence to support the amount of appellate attorney's fees awarded similarly fails. When a party challenges the amount of attorney's fees awarded, we apply a legal-sufficiency

23

standard of review. *Huey-You v. Huey-You*, No. 02-16-00332-CV, 2017 WL 4053943, at *2 (Tex. App.—Fort Worth Sept. 14, 2017, no pet.) (mem. op.) (first citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); and then citing *EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App.—Austin 2005, pet. denied)). Under this standard, if more than a scintilla of evidence supports the award, the challenge must fail. *Id.* (citing *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003)).

The record reflects that Bearfoot submitted sufficient evidence to support the fees awarded by the trial court. Bearfoot filed an affidavit signed by its counsel, Jeffrey Hill, to which an invoice was attached. The affidavit specified the amount of attorney's fees and costs that Bearfoot had incurred in the trial court; set forth the rates charged, the hours devoted to the matter, and the work performed; established Hill's qualifications to give an opinion on attorney's fees; and stated that the fees and expenses sought were reasonable, necessary, and in accordance with those customarily charged in this area for similar services rendered by an attorney with Hill's experience, reputation, and ability. In his affidavit, Hill estimated that, based on "the complex nature of appeals and the anticipated time it will require to adequately respond," Bearfoot would incur "at least $20,000 in further legal costs and fees" if the Johnsons unsuccessfully appealed the trial court's order. Thus, the record contains more than a scintilla of evidence supporting the awarded attorney's fees. *See id.*

The Johnsons argue that the evidence was insufficient to support the appellate attorney's fees awarded to Bearfoot because Hill's affidavit did not address all of the

*Rohrmoos* factors. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). However, "[b]ecause an award of conditional appellate attorney's fees depends on the outcome of the appeal and is not a final award until an appellate court issues its final judgment, the full evidentiary requirements of *Rohrmoos* are not implicated." *Porter v. Porter*, No. 04-20-00229-CV, 2021 WL 2117923, at *4 (Tex. App.—San Antonio May 26, 2021, no pet.) (mem. op.). Rather, as the Texas Supreme Court has made clear, a party seeking to recover contingent appellate fees merely needs to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). Thus, Hill's affidavit, in which he set forth his hourly rate and opined regarding the anticipated costs of an appeal, was sufficient. *See id.*

We overrule the Johnsons' second issue.

## C. Severance

In their third issue, the Johnsons contend that the trial court erred by severing their claims against Bearfoot from the remainder of the lawsuit. We disagree.

A severance splits a single suit into two or more independent actions, each of which may result in an appealable final judgment. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 383 (Tex. 1985). The decision to sever a claim rests within the sound discretion of the trial court. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (orig. proceeding). A claim is properly severable if (1) the

controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990) (op. on reh'g). The controlling reasons for a severance are to do justice, to avoid prejudice, and to further convenience. *Id.*

The Johnsons argue that the severance was an abuse of discretion because (1) it effectively split single claims into two parts, (2) the severed claims against Bearfoot involve the same facts and issues as their remaining claims against the HOA and (3) the severance will enable the defendants in each severed suit to assert defenses of claim preclusion and issue preclusion. These arguments are meritless.

Although the Johnsons' claims against Bearfoot involve the same facts and issues as their claims against the HOA and the Johnsons claim that they suffered an indivisible injury, their claims against Bearfoot were resolved by the trial court's grant of Bearfoot's motion to dismiss—a decision we affirm herein. It was not an abuse of discretion for the trial court to sever those claims and make the interlocutory order final and appealable. *Cf. Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 526 (Tex. 1982) (holding that trial court did not abuse its discretion by severing defendant's counterclaim after summary judgment was granted on plaintiff's claim); *Dorsey v. Raval*, 480 S.W.3d 10, 15 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.) (holding that trial court did not abuse its discretion by severing claims against

doctor resolved through partial summary judgment even though all causes of action, severed and un-severed, were based on same alleged act of negligence); *Arredondo v. City of Dallas*, 79 S.W.3d 657, 665 (Tex. App.—Dallas 2002, pet. denied) ("If summary judgment in favor of one defendant is proper in a case with multiple defendants, severance of that claim is proper so it can be appealed.").

Further, the Johnsons' concerns about issue preclusion and claim preclusion are unfounded. The Texas Supreme Court has "recognized . . . that 'the res judicata effects of an action cannot preclude litigation of claims that a trial court explicitly separates or severs from that action.'" *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225–26 (Tex. 2022) (quoting *Van Dyke*, 697 S.W.2d at 384). This same principle applies to issue preclusion, which is narrower than claim preclusion. *See Nunu v. Del Lago Estates Prop. Owners Ass'n*, No. 09-99-606 CV, 2003 WL 1849140, at *2 (Tex. App.—Beaumont Apr. 10, 2003, pet. denied) (per curiam) (mem. op.); *S.O.C. Homeowners Ass'n v. City of Sachse*, 741 S.W.2d 542, 544 (Tex. App.—Dallas 1987, no writ). Thus, the severance did not enable the HOA to assert claim-preclusion or issue-preclusion defenses against the Johnsons.

We overrule the Johnsons' third issue.

### III. Conclusion

Having overruled all of the Johnsons' issues, we affirm the trial court's judgment.

27

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  May 16, 2024